Kenneth E. SCHOPE, Appellant,

v.

STATE of Texas, Appellee.

No. B14–81–425–CR.

Court of Appeals of Texas, Houston (14 Dist.).

July 22, 1982.

Rehearing Denied Sept. 2, 1982.

Discretionary Review Denied Dec. 15, 1983.

---

Michael A. Maness, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

PAUL PRESSLER, Justice.

Appellant was convicted by a jury of violation of the Harris County regulations for sexually oriented commercial enterprises. Punishment was assessed at a fine of $500.

In 1979 the Texas Legislature enacted Article 2372w, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982) authorizing cities by municipal ordinances and counties by order of the Commissioners' Court to adopt regulations "restricting the location of massage parlors, nude studios, modeling studios, love parlors, and other similar commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer." Thereafter, on September 6, 1979, pursuant to this authority the Commissioners' Court of Harris County, enacted an "[o]rder adopting regulations of Harris County, Texas for certain sexually oriented commercial enterprises." (See Appendix). The regulations require a permit issued by the Sheriff of Harris County, to operate certain enterprises in those areas of the county outside the corporate limits of a city.

Appellant was charged with having violated the regulations on or about January 2, 1981 by having

intentionally and knowingly operate[d] a sexually oriented commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation and sexual gratification to the customer, to-wit: FRENCH CINEMA at 11088 U.S. 59, being a location within Harris County, Texas and not within the corporate limits of a city without a valid permit issued therefor by the Sheriff of Harris County, Texas.

The State's principal witness at trial was Oran Muir, who on the date of the alleged offense was a detective assigned to the vice division of the Harris County Sheriff's Department. He testified that he went to the French Cinema on January 2, 1981 in an undercover capacity. Signs painted on the outside wall of the building stated "Totally Nude Girls" and "Free Adult Movies." The appellant told Muir that to be admitted he must pay the "cover charge" of $3.00. Upon paying this "cover charge", Muir entered the building. He described the interior as "very dim." The walls were painted black, and there were a number of tables and chairs facing a movie screen. When he entered there was a motion picture depicting two fully clothed females "kissing, hugging, and rubbing around on each other." The film had no sound track.

Detective Muir testified that he was escorted to a table by a white female who called herself "Mitchell". Muir described Mitchell's dress as "baby doll pajamas and a pair of bikini panties [which] you could see through." She asked him if he wanted something to drink. After appellant ordered a coke, Mitchell went to the bar where appellant gave her a coke and change. While Mitchell was gone, a black female called "Coffee" came and sat down beside Muir. Muir described Coffee's attire as "thin gauzy type see-through material." Muir testified that Coffee made small talk at first but soon began to caress Muir's groin and chest. The movie at this point showed the two women, now nude, engaging in cunnilingus. Coffee asked Muir if this scene turned him on, and when Muir answered "kind of," Coffee "asked [him] if I would like to see her and Mitchell . . . do the same thing to each other in the back room." Coffee also offered to perform fellatio on Muir in a "party room" in the back. Apparently all of this would cost $85.00.

Mitchell returned. When Muir took out his money clip to pay for his drink, Coffee grabbed the money clip "and stuck it down the front of her blouse." Muir asked for his money back and argued with Coffee for several minutes over whether Muir would "go in the back room" for a live performance. Appellant was summoned and eventually gave Muir his money back. Muir apparently left shortly thereafter.

Appellant testified that he was unaware of the permit requirement and that he considered the French Cinema to be a movie

theatre. He testified that he had worked at the French Cinema or other similar establishments for approximately eight weeks and described his duties as to "collect the money as they came in the door and run the film," as well as attend the bar. The appellant further testified that 80% to 90% of the entertainment was showing two films "back to back". The other 10% to 20% of the entertainment consisted of nude dancing.

It was proven that appellant signed as an incorporator and director of KLCK, Inc. at the request of the lawyer for the corporation and that an assumed name certificate had been filed by KLCK, Inc. to use the name French Cinema. Appellant testified that he cannot read.

The custodian of records for permits issued pursuant to the regulations testified that no permit was on file which was issued either to the French Cinema or to the appellant personally.

There is a great deal of similarity between the regulations in question here and the Houston City ordinance adopted under article 2372w. This court has recently upheld the city ordinance except for a provision of the enabling legislation, article 2372w § 5(c), which necessitated the reversal of the conviction under it. *Memet v. State,* 642 S.W.2d 518 (Tex.App.—Houston [14th Dist.] 1982). Here there is no similar attack on the enabling statute. Many of the attacks upon the county ordinance were answered in the *Memet* decision, and reference is made thereto.

■ By his first ground of error, appellant alleges that the order is void in that it exceeds the legislative authority by imposing a permit requirement on all "sexually oriented commercial enterprises," regardless of their geographical location within Harris County. Appellant contends that the statute authorizes the county to regulate only the *location* of such businesses and that to require a permit of *all* such businesses exceeds that authority because the county cannot assume control over *all* businesses and *all facets* of those businesses other than *location*. The county commissioner's court can exercise only powers spe-

cifically conferred on it by the Constitution and statutes. *Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451, 453 (1948). However, it "has implied authority to exercise a broad discretion to accomplish the purposes intended." *Anderson v. Wood,* 137 Tex. 201, 152 S.W.2d 1084, 1085 (1941).

■ The regulatory authority delegated to counties is in section 4(a), Tex.Rev.Civ. Stat.Ann. art. 2372w (Vernon Supp.1982), as follows:

"Regulations adopted under this Act may *restrict the location* of regulated enterprises to particular areas, *restrict the density* of the regulated enterprises, or *prohibit the operation* of a restricted enterprise within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the . . . county finds to be inconsistent with the operation of a restricted establishment."

Section 4(b), Tex.Rev.Civ.Stat.Ann. art. 2372w (Vernon Supp.1982), provides as follows:

The city or county may require the obtaining of a permit for the operation of a restricted establishment. The city or county may charge a fee for the permit, but the fee may not exceed the actual cost of processing the permit application.

The regulations in question merely control location. The permit application required by the regulations simply allow the county to make an intelligent determination as to whether the enterprise complies with the location requirement. *Memet v. State, supra.* The ground of error is overruled.

■ By his second ground of error, appellant alleges that his conviction is violative of his right to due process for the following reasons: (1) the definition of "sexually oriented commercial enterprise" in § 4(1) of the regulations is unconstitutionally vague by use of the phrase "any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer;" (2) the term

"operate," in § 6(a) of the regulations fails to apprise persons potentially subject to the regulations of what specific conduct or action constitutes a violation of the law; and (3) appellant was deprived of fair notice either that the regulations were applicable to him or that his conduct was criminal, because "movie theatres" are specifically exempted from regulation.

The questioned definition states as follows:

"sexually oriented commercial enterprise" means a massage parlor, nude studio, modeling studio, love parlor and any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer.

This definition was found to be sufficiently clear as to provide adequate warning of this proscribed conduct by the Fifth Circuit in *Stansberry v. Holmes*, 613 F.2d 1285, 1289–1290.

Any statute or ordinance which proscribes certain conduct must be sufficiently definite to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," and to avoid the possibility of arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 [92 S.Ct. 839, 843, 31 L.Ed.2d 110] (1971). A provision need not, however, be cast in terms that are mathematically precise; it need only give fair warning of the conduct proscribed, in light of common understanding and practices. (citations omitted) .... The definition is limited to businesses "whose *major business* is the offering of a *service which is intended* to provide sexual stimulation or sexual gratification.)" (emphasis added.) By including the phrase "major business," the county commissioners have excluded businesses whose activities might incidentally cause sexual stimulation. Certainly no one would contend that the major business of an art school or dance studio was the provision of services intended for sexual gratification.

Additional definiteness is provided by the fact that the section specifically list three types of regulated business—massage parlors, nude studios, and love parlors—and applies the definition to "any other similar commercial enterprise." We find that this definition is sufficiently clear and provides adequate warning of the proscribed conduct.

Clearly the main purpose of the business was "the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer". Although movies and dancing can be forms of speech which are entitled to the First amendment protection, there can be no question that "adult" theatres may be subject to zoning regulations. *Stansberry, supra* at 1288; *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). As the statute and regulations simply seek to regulate the location of certain establishments, the regulations are "a rational and understandable effort to deal with a perceived evil that affect(s) living conditions in the area" *Stansberry, supra* at 1289, and "reasonable regulations of the time, place and manner of protected speech, where those regulations are necessary to further significant governmental interest, are permitted by the First Amendment." *Young v. American Mini Theatres, Inc., supra* 427 U.S. at 63, fn. 18, 96 S.Ct. at 2448 fn. 18. See *Memet, supra*.

Appellant questions whether a bartender or waitress can be considered one who does "operate a ... commercial enterprise." Section 6(a) of the regulations states "[i]t shall be unlawful for any person to own or operate a Sexually Oriented Commercial Enterprise...." The Fifth Circuit, considering similar language in similar regulations governing massage parlors in Harris County, declared that the word "operating" is "sufficiently explicit to inform those who are subject to it what conduct on their part would render them liable to penalties." *Harper v. Lindsay*, 616 F.2d 849, 857 (5th Cir.1980); *Memet v. State, supra*. The regulations make it clear that "operating" a business is an act by one either in an owner-

ship or *management* capacity and not a mere employee. Section 5 draws a distinction between "operated by" and "employing". Section 8 calls for detailed information on both the owners and "the manager or other individual to be principally in charge of the operation of the restricted establishment." Appellant's own testimony showed that he was the person primarily responsible for the day to day operation of the French Cinema. Appellant's name appears on the Articles of Incorporation and this suggests that he is more than a mere employee. *Cf. Courtney v. State,* 639 S.W.2d 16 (Tex.App.—Houston [1st Dist.] 1982).

■ Appellant further contends that the order is unconstitutionally vague because it neither defines "movie theatre" nor limits that term's application to establishments that show motion pictures exclusively. By common understanding a "movie theatre" is that which exclusively promotes the exhibition of motion pictures. Here the exhibition of motion pictures appeared to be merely a part of the "service". Although there was testimony that movies were shown 80% to 90% of the time, nude dancing was featured along with the activities in the "party room". Further, there was no marquee advertising the names of the films being presented. The movies were advertised as free.

■ By his third and fourth grounds of error, appellant argues that the permit requirement is a restraint on his "freedom of expression". He also argues that the permit requirement is unconstitutional because it fails to incorporate definite and specific criteria by which the sheriff is to grant or deny a permit or to provide any mechanism for review of a decision by the sheriff to deny a permit. The county regulation was enacted for the purpose of controlling the location of sexually oriented commercial enterprises and not to control content. *Stansberry v. Holmes, supra.* This mere regulation of location for the exhibition of sexually explicit material does not violate the purpose of the First amendment. *Young v. American Mini Theatre, Inc., supra,* 427

U.S. at 65, 96 S.Ct. at 2449. The appellant cites numerous cases where permit systems were found to be unconstitutional prior restraints on "freedom of expression". Each of these systems was held unconstitutional because it either gave (a) virtually unlimited discretion to an administrative official to grant or deny a permit or (b) standards for granting or denying the permit which were so vague that they authorized virtually standardless censorship. The order in question creates neither of these problems.

Here the sheriff is *required* to issue a permit to an applicant who has satisfied the requirements of the regulation. See Regulations § 10(b). The information which an applicant must report when applying merely consists of facts. The regulations specify distances within which restricted enterprises are prohibited, specify how measurements are to be made, and what is necessary to apply for a permit. Investigation by the Sheriff of the establishment is limited to a determination as to whether the location requirements are satisfied. The only real discretion afforded to the sheriff is to determine whether or not the operation *"as proposed by the application"* is prohibited by law. In this he can rely on the Texas Penal Statutes.

The appellant argues that if the sheriff erroneously denies a permit, the regulations do not provide for prompt judicial review. A similar challenge was made to the San Antonio Massage Parlor Ordinance in *Pollard v. Cockrell,* 578 F.2d 1002 at 1016, and rejected. Mere silence in the regulations concerning a legal remedy is not a denial of a remedy. As long as the order does not prevent a judicial remedy when a permit is denied the order is not unconstitutional on its face. See *Harper v. Lindsay, supra* at 858. "Where the issuance of a license or permit required by law is arbitrarly refused, mandamus is an appropriate remedy." *Rash v. City Council of City of Houston,* 557 S.W.2d 324, 325 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Appellant's third and fourth grounds of error are overruled.

■ By his fifth ground of error, appellant argues that the state's evidence was insufficient in that (1) the state failed to prove that the French Cinema was *not* a movie theatre; (2) the state failed to prove that the French Cinema was *not* licensed to sell alcoholic beverages; and (3) the state failed to prove that the appellant knew a permit was required. The first and second arguments are based upon the exemption of movie theatres and places licensed to sell alcoholic beverages under the statute and the regulations. These arguments assume that the state was required to prove that the French Cinema was neither a movie theatre nor a business licensed to sell alcoholic beverages. The state has no such burden of proof. The language of § 3(b) of article 2372w does not specify where the burden of proof should be. Therefore, we are governed by § 2.03(e) Tex.Penal Code Ann. (Vernon 1977) which states that "[a] ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense." Section 2.03 further provides that the state is not required to negate the existence of a defense and the issue of the existence of a defense should not go the jury unless there is some evidence to substantiate that defense. The defendant has the burden of raising a defense, but the prosecution has the burden of disproving it once it has been raised. *Ramos v. State,* 478 S.W.2d 102 (Tex.Crim. App.1972). The defense raised the issue of the movie theatre exemption and the jury was properly instructed. The state met its burden of disproving it. There was no evidence presented by the appellant that the enterprise was licensed to sell alcoholic beverages and, therefore, that issue was not raised.

■ Proof that the appellant knew of the Harris County permit requirement is not necessary. Tex.Penal Code Ann. § 8.03(a) (Vernon) provides that "[i]t is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect". The state's burden was to prove that the appellant intentionally and knowingly operated a sexually oriented commercial enterprise without a permit. This was proven. The jury heard testimony that appellant operated the movie projector, fixed drinks behind the bar, received the "cover" charge and arbitrated the dispute between the undercover officer and the waitresses. The jury heard that there was nude dancing, the showing of sexually explicit films, and invitations to "the party room". Viewed most favorably to the prosecution, this evidence is sufficient to uphold the appellant's conviction. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The conviction is affirmed.

## APPENDIX

ORDER ADOPTING REGULATIONS OF HARRIS COUNTY, TEXAS FOR CERTAIN SEXUALLY ORIENTED COMMERCIAL ENTERPRISES

Order adopting regulations of Harris Co., Texas for certain sexually oriented Commercial Enterprises 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

THE STATE OF TEXAS
COUNTY OF HARRIS

———

The Commissioners' Court of Harris County, Texas, convened in regular session, sitting as the governing body of Harris County, Texas, at the Harris County Administration Building in the City of Houston, Texas, on the 6th day of September, 1979, with the following members present, to-wit:

| | |
|---|---|
| Jon Lindsay | County Judge |
| Tom Bass | Commissioner, Precinct No. 1 |

| | | |
|---|---|---|
| James Fonteno | Commissioner, Precinct No. 2 | Pre- |
| R.Y. Eckels | Commissioner, Precinct No. 3 | Pre- |
| E.A. Lyons, Jr. | Commissioner, Precinct No. 4 | Pre- |
| Anita Rodeheaver | County Clerk | |

and the following member(s) absent, to-wit: None, when the following business was transacted:

Commissioner Lyons introduced an Order and made a motion that the same be adopted. Commissioner Eckels seconded the motion for adoption of the Order. The motion, carrying with it the adoption of the Order, prevailed by the following vote.

AYES: County Judge Lindsay, Commissioners Bass, Eckels, Fonteno and Lyons. NOES: None.

The County Judge thereupon announced that the Order has been duly and lawfully adopted. The Order thus adopted follows:

## ORDER ADOPTING REGULATIONS OF HARRIS COUNTY, TEXAS FOR CERTAIN SEXUALLY ORIENTED COMMERCIAL ENTERPRISES

WHEREAS, the 65th Legislature of the State of Texas has recently enacted House Bill No. 654 and the same has been signed by the Governor on or about May 17, 1979; and

WHEREAS, such legislation authorizes the Commissioners' Court of any County to adopt regulations applicable to the location of Certain Sexually Oriented Commercial Enterprises in unincorporated territory in the County; and

WHEREAS, the Commissioners' Court of Harris County, Texas, has considered the matter and deems it appropriate to adopt Regulations regulating the location of Certain Sexually Oriented Commercial Enterprises to protect the public health and safety and to prevent violations of state law; and

WHEREAS, due notice of the meeting was given as required by Article 6252–17 of Vernon's Revised Civil Statutes Annotated:

NOW, THEREFORE, BE IT ORDERED, ADJUDGED AND DECREED BY THE COMMISSIONERS' COURT OF HARRIS COUNTY, TEXAS, SITTING AS THE GOVERNING BODY OF HARRIS COUNTY, TEXAS:

That the Regulations attached appended hereto, entitled "Regulations of Harris County, Texas for The Location of Certain Sexually Oriented Commercial Enterprises" are made part of this Order, and are adopted as the Regulations of Harris County, Texas, and all officials of Harris County are DIRECTED to perform such duties as required of them under said Regulations; and

That the Clerk of this Court is authorized and directed to publish these Regulations in the Houston Chronicle, a newspaper of general circulation published in Harris County, Texas, at least thirty days prior to the effective date thereof.

## REGULATIONS OF HARRIS COUNTY, TEXAS FOR THE LOCATION OF CERTAIN SEXUALLY ORIENTED COMMERCIAL ENTERPRISES

Section 1. *Authority*

These Regulations are adopted by the Commissioners' Court of Harris County, Texas, acting in its capacity as the governing body of Harris County, Texas. Authority of Harris County to adopt these Regulations is House Bill No. 654, enacted by the 66th Legislature of the State of Texas and signed by the Governor on or about May 17, 1979.

Section 2. *Administration*

The Commissioners' Court hereby designates the Sheriff to inspect and issue permits pursuant to the above authority. The administration of these Regulations, including but not limited to issuance of permits and inspections hereunder, shall be performed by the Sheriff or his duly authorized deputy. Any peace officer certified by the State of Texas may enforce these Regulations.

Section 3. *Area Covered By Regulations*

These Regulations apply only to the parts of the county outside the corporate limits of a city.

## Section 4.  *Definitions*

As used in these Regulations:

(a) "Commissioners' Court" means the Commissioners' Court of Harris County, Texas;

(b) "County" means Harris County, Texas;

(c) "Church or place of religious worship" means a building in which persons regularly assemble for worship, intended primarily for purposes connected with faith, or for propagating a particular form of belief;

(d) "Child Care Facility" means a building used as a day nursery, children's boarding home, child placing agency or other place for the care or custody of children under fifteen years of age, licensed by the State of Texas pursuant to Article 4442a, Vernon's Texas Civil Statutes;

(e) "Dwelling" means a house, duplex, apartment, townhouse, condominium, mobile home or any other building used for residential purposes;

(f) "Hospital" means a building used to provide health services for human inpatient medical care for the sick or injured licensed pursuant to the Texas Hospital Licensing Law (Article 4437f Vernon's Texas Civil Statutes) or operated by an agency of the federal government, or a convalescent facility licensed pursuant to Article 4442c, Vernon's Texas Civil Statutes;

(g) "Person" means an individual, partnership, corporation, or other entity;

(h) "Public Building" means a building used by federal, state, or local government and open to the general public;

(i) "Public Park" means a tract of land maintained by the federal, state, or local government for the recreation and enjoyment of the general public;

(j) "Regulations" means Regulations of Harris County, Texas, for the Location of Certain Sexually Oriented Commercial Enterprises;

(k) "School" means a building where persons regularly assemble for the purpose of instruction or education together with the playgrounds, dormitories, stadiums, and other structures or grounds used in conjunction therewith;

(*l*) "Sexually Oriented Commercial Enterprise" means a massage parlor, nude studio, modeling studio, love parlor and any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer;

(m) "Sheriff" means the Sheriff of Harris County, Texas;

(n) "State" means the State of Texas;

(*o*) "City" means an incorporated city, town, or village and includes a home-rule city.

## Section 5.  *Bookstores, etc. Excepted*

These Regulations do not apply to the following:

(a) Any bookstore, movie theatre, or business licensed to sell alcoholic beverages;

(b) Any business, operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the license held;

(c) Any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts.

## Section 6.  *Permit Required*

(a) It shall be unlawful for any person to own or operate a Sexually Oriented Commercial Enterprise at a location in the parts of the County outside the corporate limits of a city without a valid permit issued therefor by the Sheriff in accordance with the provisions of these Regulations.

(b) Before the issuance of a permit, the applicant must certify that the proposed Sexually Oriented Commercial Enterprise will be located a minimum

of 1500 feet from the following, which the Commissioners' Court hereby finds to be inconsistent with the operation of a restricted establishment, to-wit:

(1) A child care facility;

(2) A church or place of religious worship;

(3) A dwelling; ·

(4) A hospital;

(5) A building in which alcoholic beverages are sold;

(6) A public building;

(7) A public park;

(8) A school.

(c) Subsection (b) of this Section 6 will apply to all Sexually Oriented Commercial Enterprises regardless of whether or not existing on the effective date of these Regulations. However, should any Court determine that such requirement is unconstitutional or invalid insofar as it applies to Sexually Oriented Commercial Enterprises existing on the effective date of these Regulations, then and in that event, the applicant may certify that the Sexually Oriented Commercial Enterprise was in existence on the effective date of these Regulations in lieu of making the certification provided for in said Subsection (b). Provided, however, that any permit issued on the basis of an application making a certification pursuant to this subsection (c) in lieu of certification under subsection (b) shall have written thereon "This permit is valid for only one (1) year from October 1, 1979."

(d) For the purposes of this section, measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the building or structure used by the restricted establishment to the nearest portion of the building, structure, or facility set forth in subsection (b).

## Section 7. *Permit Displayed*

A Sexually Oriented Commercial Enterprise permit issued under these Regulations shall be displayed at all times in an open and conspicuous place in the restricted establishment for which it was issued.

## Section 8. *Permit Application*

Any person desiring a Sexually Oriented Commercial Enterprise permit shall file a written application with the Sheriff on a form to be prescribed by him.

(a) The application shall set forth the following:

(1) The name of the applicant and whether the applicant is an individual, general partnership, limited partnership, corporation or other entity;

(2) The name under which the restricted establishment is to be operated and a general description of the service to be provided;

(3) The address and a full legal description of the parcel of land on which the restricted establishment is to be located;

(4) The name, residence address and telephone number, if any, of the manager or other individual to be principally in charge of the operation of the restricted establishment;

(5) Written declaration that the information contained in the application is true and correct, said declaration being duly dated and signed in the County. If the applicant is an individual, the application shall be signed and sworn to by the applicant. If the applicant is a partnership, the application shall be signed and sworn to by a partner thereof. If the applicant is a corporation or other entity, the application shall be signed and sworn to by an authorized officer of such corporation or entity.

(b) The application shall be accompanied by the following:

(1) A tender of the correct permit fee as hereinafter provided;

(2) A certified copy of the assumed name certificate filed in compliance with the Assumed Business or Professional Name Act (Vernon's Texas Codes Annotated, Business and Commerce Code, Chapter 36) if the applicant is to operate the restricted establishment under an assumed name;

(3) A certified copy of the article of incorporation, together with all amendments thereto, if applicant is a Texas Corporation;

(4) A certified copy of the certificate of authority to transact business in this State, together with all amendments thereto, if applicant is a foreign corporation;

(5) A certified copy of the certificate of limited partnership, together with all amendments thereto, filed in the Office of the Secretary of State under The Texas Limited Partnership Act (Article 6132a Vernon's Texas Civil Statutes), if the applicant is a limited partnership formed under the laws of Texas;

(6) A certified copy of the certificate of limited partnership and the qualification documents, together with all amendments thereto, filed in the office of the Secretary of State under the Texas Limited Partnership Act, if the applicant is a foreign limited partnership.

### Section 9. *Investigation by Sheriff*

Upon receiving the application for a Sexually Oriented Commercial Enterprise permit, the Sheriff shall caused to be conducted an investigation for the purpose of determining whether or not such premises comply with the location requirements as set forth in these Regulations.

### Section 10. *Issuance of Sexually Oriented Commercial Enterprise Permit*

(a) Any permit required by these Regulations shall be issued and signed by the Sheriff or his duly authorized deputy.

(b) The Sheriff shall issue a Sexually Oriented Commercial Enterprise permit within thirty (30) days of receipt of the application unless he finds that:

(1) The correct permit fee has not been tendered to the Sheriff;

(2) The operation as proposed by the application is prohibited by law;

(3) The applicant has made any false, misleading or fraudulent statement of fact in the permit application or in any document required by these Regulations to accompany the application;

(4) The application or the establishment location does not meet all requirements of these Regulations.

### Section 11. *Fees*

To defray the actual cost of processing the Sexually Oriented Commercial Enterprise permit application, the permit fee shall be One Hundred ($100.00) Dollars.

### Section 12. *Return of Fee*

No portion of any fee collected under these Regulations shall be returned after a permit has been issued or refused.

### Section 13. *Transfer Prohibited*

A Sexually Oriented Commercial Enterprise permit is not transferable, assignable or divisible.

### Section 14. *Permit Valid for Specified Location*

Each permit issued under these Regulations shall be valid at the location therein specified, and not otherwise.

### Section 15. *Obtaining Permit by Fraud*

It shall be unlawful for any person to knowingly make any false, fraudulent or untruthful statement, either written or oral, or in any way knowingly to conceal any material fact, or to give or use any assumed name or fictitious name other than one duly filed for record in compliance with the Assumed Business or Professional Name Act (Vernon's Texas Codes Annotated, Business and Commerce Code, Chapter 36).

### Section 16. *Fraudulent Use of Permit of Another*

It shall be unlawful for any person to use a Sexually Oriented Commercial Enterprise permit which has been issued to another person.

### Section 17. *Counterfeiting, Changing, Defacing Permit*

It shall be unlawful for any person to counterfeit, forge, change, deface, or alter a Sexually Oriented Commercial Enterprise permit.

### Section 18. *Misdemeanor*

Violation of any provision of these Regulations is a Class B misdemeanor.

**Section 19.** *Nuisance*

The operation of a Sexually Oriented Commercial Enterprise without a Sexually Oriented Commercial Enterprise Permit is hereby declared to be a public nuisance.

**Section 20.** *Injunction*

The County may sue in District Court to enjoin the violation of any provision of these Regulations.

**Section 21.** *Effect on State Law*

These Regulations do not legalize anything prohibited under the Penal Code or other State Law.

**Section 22.** *Severability*

If any provision of these Regulations or its application to any person or circumstances is held invalid for any reasons, the invalidity does not affect any other provisions or application of these Regulations which can be given effect without the invalid provision or application, and to this end the provisions of these Regulations are declared to be severable.

**Section 23.** *Effective Date*

These Regulations shall become effective on the fifteenth day of October, 1979.