Opinion issued July 25, 2002








 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00505-CR

____________


JUSTUS LARUE TAYLOR, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 7

Harris County, Texas

Trial Court Cause No. 1048929






O P I N I O N

 The trial court found appellant, Justus Larue Taylor, guilty of managing a
sexually-oriented enterprise without a permit and assessed punishment at three days
in jail and a $500.00 fine. See Tex. Loc. Gov't Code Ann. § 243.010(b) (Vernon
1999); Houston, Tex., Code of Ordinances §§ 28-253(a), 28-259 (Supp. 2002). 
Appellant brings six issues contending: (1) the trial court erred by introducing adult-
arcade evidence; (2) the evidence was legally insufficient to prove the existence of
an "adult bookstore"; (3) the evidence was legally insufficient to show appellant acted
as a "manager"; (4) the evidence was legally insufficient to establish appellant
intentionally or knowingly violated the ordinance; and (6) specific ordinance
definitions are unconstitutionally overbroad both facially and as applied to appellant. 
We affirm. 

Facts

 On the evening of November 14, 2001, Houston Police Department (HPD)
Vice Squad Officers Surginer, Williams, and Carter entered All Star News and Video
(All Star) to check for compliance with a city ordinance that regulates adult
bookstores. Appellant was the only All Star employee present and he was seated
behind the counter located in the adult portion of the store. 

 Officer Surginer testified he had previously visited All Star on numerous
occasions during the course of an investigation, and he noted that All Star rents
videotapes and sells both magazines and videotapes. 

 Officer Surginer testified the All Star building is composed of three areas. The
front area has nonadult videotapes and magazines. Passing through an interior
doorway, the next area has only adult videotapes and magazines. The third area is an
adult arcade, (1) to which a customer is only given access after paying a six-dollar
entrance fee. The adult arcade has 20 booths, each with a video monitor. Customers
entering the adult arcade are given tokens that operate the video monitors. Videotape
selections include both adult and nonadult content. 

 The officers were investigating All Star to determine, among other reasons, if
All Star had covered the "glory holes" (2) in the adult arcade. Officer Surginer testified
appellant recognized him as a vice squad officer and stated "all the holes have been
covered up." Officer Surginer responded, "I'm going to look and I'm going to find
out for myself." 

 Officer Williams testified he had previously visited All Star on about 20
occasions. He stated that the nonadult video selections appeared old and several of
its display cases were covered with cobwebs. Officer Williams estimated the ratio of
adult to nonadult store material was about half-and-half. However, Officer Williams
testified that anyone walking into All Star would know that the business is an adult
or sexually-oriented enterprise. Each time Officer Williams visited All Star, he
observed several customers examining videotapes in the adult area and several more
customers in the adult arcade. 

 After paying the six-dollar fee, Officer Williams was granted entry into the
adult arcade. Officer Williams observed that the "glory holes" were covered. Officer
Williams then approached appellant and determined that appellant had no manager's
permit for a sexually-oriented business. 

 Officer Carter testified All Star was a sexually-oriented business. Officer
Carter stated that, when he entered All Star, appellant recognized him as a vice officer
and told him the adult arcade was closed despite the fact that Officers Surginer and
Williams had already entered the arcade. Officer Carter noted All Star was normally
open 24 hours a day. 

 Harris County District Attorney investigator, Charles Propst, testified he visited
All Star on one occasion and observed no one in the nonadult area during a 45-minute
period. (3) 

 All Star employee and sole defense witness, Michael Foster, testified 70% of
the store's inventory was nonadult. According to Foster, the adult arcade features
both adult and nonadult videos. Further, Foster testified the store displayed some
current magazines, both adult and nonadult, but, "we buy, sell and trade used
magazines." He does not consider All Star to be an adult bookstore. 


Admissibility of Evidence

 In issue one, appellant argues the trial court erred by admitting evidence of the
adult arcade to prove that appellant operated an adult bookstore. Appellant claims
the adult bookstore and adult arcade are two separate businesses, "separately and
differently" defined in the ordinance, and therefore evidence concerning the adult
arcade was not relevant to the issue of whether All Star was an adult bookstore. 

 The determination of admissibility of evidence is within the sound discretion
of the trial court and will not be reversed on appeal unless a clear abuse of discretion
is shown. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986); Williams
v. State, 916 S.W.2d 53, 55 (Tex. App.--Houston [1st Dist.] 1996, no pet.). A trial
court has abused its discretion when its "decision was so clearly wrong as to lie
outside that zone within which reasonable persons might disagree." Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992). 

 Appellant argues the trial court erred by admitting evidence concerning the
adult arcade because it was irrelevant. Evidence is relevant if it has any tendency to
make the existence of any fact that is of consequence to the case more probable or
less probable than it would be without the evidence. Tex. R. Evid. 401. 

 The ordinance defines an adult bookstore as: 

 An establishment whose primary business is the offering to
customers of books, magazines, films, or videotapes (whether for
viewing off-premises or on-premises by use of motion picture
machines or other image-producing devices), periodicals, or other
printed or pictorial materials which are intended to provide sexual
stimulation or sexual gratification to such customers, and which are
distinguished by or characterized by an emphasis on matter
depicting, describing or relating to specified sexual activities, or
specified anatomical areas.


Houston, Tex., Code of Ordinances, § 28-121 (Supp. 2002) (emphasis added). 


 Here, the adult arcade offered customers the ability to watch adult videos on-premise. Thus, the activities offered within the adult arcade fall within the definition
of an adult bookstore. Id. The evidence was relevant to show that All Star operated
as an adult bookstore. The fact that the ordinance separately and differently defines
an adult arcade and adult bookstore does not render evidence concerning one
irrelevant to the other. We hold the trial court did not abuse its discretion by
admitting evidence concerning the adult arcade because it tends to show that All Star
is an adult bookstore. 

 We overrule issue one. 

Legal Sufficiency of the Evidence

 In issues two, three, and six, appellant argues the evidence is legally
insufficient to support his conviction for managing a sexually-oriented enterprise
without a permit. Appellant specifically contends that the State failed to establish
that All Star was an "adult bookstore" and that he acted "intentionally or knowingly"
as a "manager." 

 When reviewing the legal sufficiency of the evidence to support a criminal
conviction, the critical inquiry is whether the evidence in the record could reasonably
support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979). We review the legal sufficiency of the
evidence by viewing the evidence in the light most favorable to the verdict to
determine if any rational factfinder could have found the essential elements of the
crime beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim.
App. 2000); Howley v. State, 943 S.W.2d 152, 155 (Tex. App.--Houston [1st Dist.]
1997, no pet.).

"Adult Bookstore"

 Appellant, in issue two, contends that All Star was not an adult bookstore
because the offering of adult material for sale was not its "primary business." We
disagree. Appellant was convicted for managing a sexually-oriented "enterprise"
without a permit. Houston, Tex., Code of Ordinances, § 28-253(a) (Supp. 2002). 
An enterprise is defined as an "adult bookstore . . . or any establishment whose
primary business is the offering of a service or the selling, renting or exhibiting of
devices or any other items intended to provide sexual stimulation or sexual
gratification to its customers." Houston, Tex., Code of Ordinances, § 28-251
(Supp. 2002) (emphasis added). 

 Appellant argues a "bookstore is adult if its majority or predominant business,
on a continual basis, is to deal in and place emphasis upon such material by way of
inventory, space, advertising, sales and revenues." Appellant asserts that All Star's
inventory, floor spacing, advertising, and sales revenue indicate that its primary
business was derived from nonadult materials. Appellant notes that Officer Williams
testified the majority of the material in the store might be nonadult and Foster
testified that 70% of the store's inventory was nonadult. No evidence was presented
to show the store specifically advertised itself as an adult bookstore. Foster testified
that the store's cash register was not programmed to separate sales items into adult
and nonadult categories. Therefore, appellant concludes that the evidence failed to
prove beyond a reasonable doubt that All Star derived its primary business from adult
materials. 

 The ordinance does not define "primary business," so we must construe that
term by its common and appropriate usage. Houston, Tex., Code of Ordinances
§ 1-2 (Supp. 2002) ("Words and phrases shall be construed according to the common
and approved usage of the language; provided, however, that the technical words and
phrases and such others as may have acquired a peculiar and appropriate meaning in
law shall be construed and understood according to such meaning.") When used as
an adjective, "primary" means "first in rank or importance: chief, principal." 
Webster's Third New International Dictionary 1800 (Philip B. Gove ed.,
1961). "Primary business" therefore means the principal or most important business. 

 Officer Surginer testified he routinely visited All Star and never observed any
customers in the nonadult area of the store. Similarly, Officer Williams testified he
visited All Star on 20 occasions and only saw customers in the adult area, but never
saw any customer in the nonadult area. 

 Officer Williams noted there were cobwebs on some videotapes in the nonadult
area, but there was no such evidence of disuse in the adult area. He added that the
adult videotapes were newly packaged and were not covered with cobwebs. Based
on his observations, Officer Williams stated anybody walking into that business
would know that the business is an adult or sexually-oriented enterprise. Officer
Carter considerd All Star a sexually-oriented business based on his experience and
because it encompasses an adult bookstore and adult arcade. 

 Viewing the evidence in the light most favorable to the verdict, we hold the
jury could have found beyond a reasonable doubt that All Star was an adult
bookstore. 

 We overrule issue two. 



"Manager"

 In issue three, appellant argues that there was legally insufficient evidence to
support the finding that he acted as a manager. A manager includes "any person who
. . . conducts any business in an enterprise with respect to any activity conducted on
the premises of the enterprise, including any 'on-site manager.'" Houston, Tex.,
Code of Ordinances, § 28-251 (Supp. 2002). A person "conducts any business in
an enterprise" if he, among other acts, operates a cash register or delivers a service
to any customer. Id. An "on-site manager" is defined as:

 A person charged by an owner or operator of an enterprise with the
responsibility for direct supervision of the operation of the enterprise
and with monitoring and observing all areas of the enterprise to
which customers are admitted at all times during which the enterprise
is open for business or customers are on the premises of the
enterprise.

 

Id.

 

 The evidence was legally sufficient to support appellant's conviction for
managing a business without a permit because appellant conducted business in the
store as an on-site manager by operating the cash register and delivering a service
offered by the enterprise to customers. Appellant acted as an on-site manager when
he allowed Officers Surginer and Williams into the adult arcade after they paid the
six-dollar fee. Appellant argues that taking a fee for the adult arcade and permitting
customers to enter are not services offered by the adult bookstore. However, as
indicated in our discussion of issue one, we held that the adult arcade was part of the
entire All Star enterprise and, as such, within the statutory definition of a sexually-oriented business. As the only employee on the premises, the factfinder could
reasonably infer that appellant was acting as the on-site manager. See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789 (trier of fact weighs the evidence and may draw
reasonable inferences from basic facts to ultimate facts). 

 We overrule issue three. 

"Intentionally or knowingly"

 In issue six, appellant argues the evidence was legally insufficient to establish
he "intentionally and knowingly" acted as a manager of an adult bookstore without
a permit. Appellant contends he was not aware that All Star was an adult bookstore
and that he was required to have a permit. Having held in issue two, that the evidence
was legally sufficient to establish that All Star was an adult bookstore, it follows that
a factfinder could reasonably infer that appellant knew All Star was an adult
bookstore. Further, it is no defense that appellant was ignorant of the ordinance's
requirements. See Tex. Pen. Code Ann. §§ 1.03(b), 1.07(30), 8.03(a) (Vernon 1994);
Schope v. State, 647 S.W.2d 675, 681 (Tex. App.--Houston [14th Dist.] 1982, pet.
ref'd). Alternatively, appellant contends he had no duty to obtain a permit because
he is neither the owner nor operator. See Houston, Tex., Code of Ordinances, §
28-253(b) (Supp. 2002) (sets forth duty of enterprise owner or operator to ensure a
person acting in the capacity of entertainer or manager holds a permit). In issue three,
we found appellant acted as a manager. The ordinance defines an operator as "the
manager or other natural person principally in charge of an enterprise." Houston,
Tex., Code of Ordinances, § 28-251 (Supp. 2002). As manager, appellant had a
statutory duty to obtain a permit. Viewing the evidence in the light most favorable
to the verdict, we hold the jury could have found beyond a reasonable doubt that
appellant intentionally and knowingly acted as a manager of an adult bookstore
without a permit. 

 We overrule issue six.

Constitutional Challenge of Definitions

 In issue four, appellant argues the definitions of "manager" and "on-site
manager" are unconstitutionally overbroad, both facially and as applied to him. 
Appellant argues the definitions are vague and overbroad because they include
anyone working in the store, whether they are only clerks and whether they are
compensated. 

 When reviewing the constitutionality of a statute, we presume the statute is
valid and the legislative body has not acted unreasonably or arbitrarily in enacting the
statute. Ex parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The
burden rests on the party challenging the statute to establish its unconstitutionality. 
Id. A statute or ordinance is overbroad if, in its reach, it prohibits constitutionally-protected conduct. (4) Grayned v. City of Rockford, 408 U.S. 104, 114-15, 92 S. Ct.
2294, 2302 (1972). 

"Manager" and "on-site manager"

 Appellant states the definitions of "manager" and "on-site manager" are (1)
"overbroad and over inclusive, and sweep within their parameters, and subject to
criminal prosecution, [persons who commit] otherwise innocent conduct," (2)
constitute a prior restraint on the exercise of First Amendment rights, (3) are not
narrowly tailored to serve any identified substantial governmental interest, and (4)
violate Fourteenth Amendment due-process protection. When challenging the
constitutionality of a statute, a defendant must show that, in its operation, the statute
is unconstitutional as applied to him in his situation; that it may be unconstitutional
as to others is not sufficient. Raby v. State, 970 S.W.2d 1, 7 (Tex. Crim. App. 1998). 
Appellant does not relate the definitions to any of the other requirements of the
ordinance, and he provides no argument or explanation of how the breadth of the
definitions is unconstitutional, either facially or as applied to him. (5) 

 We overrule issue four. 

"Primary business" 

 Appellant states, in issue five, that the term "primary business" (6) is vague and
overbroad as applied to him in the context of a 50-50 (7) store. However, appellant has
failed to preserve this issue. 

 To complain about the constitutionality of an ordinance as applied, a defendant
must raise the issue at trial. Curry v. State, 910 S.W.2d 490, 496 (Tex. Crim. App.
1995); see Tex. R. App. P. 33.1(a). Because appellant failed to object at trial that the
ordinance term, "primary business," is vague and overbroad, the trial court could not
render an adverse ruling, and therefore, appellant has waived this issue. 

 We overrule issue five. 


Conclusion

 We affirm the trial court's judgment.


Sherry J. Radack

Justice

Panel consists of Justices Jennings, Radack, and Duggan. (8)

Do not publish. Tex. R. App. P. 47.4.
1. To reach the adult arcade, a customer must enter through the store's nonadult
area. 
2. Glory holes are predrilled holes in arcade booths used for anonymous sex. 
3. Propst testified he spent half of his 45-minute visit in the nonadult area and
half in the adult area. 
4. Sexually-oriented materials are due less protection than other forms of
expression. Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 70, 96 S. Ct. 2440,
2452 (1976); Smith v. State, 866 S.W.2d 760, 765 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd). 
5. We note that the United States Court of Appeals for the Fifth Circuit has
upheld city ordinances requiring that all owners, clerks, and employees of adult
businesses be licensed, holding that this requirement "substantially relates to
the substantial government interest of curtailing pernicious side effects of adult
businesses." TK's Video, Inc. v. Denton County, Tex., 24 F.3d 705, 709-10
(5th Cir. 1994). 
6. Appellant acknowledges the term "primary business" has been upheld against
constitutional challenges. See generally Kaczmarek v. State, 986 S.W.2d 287, 
292 (Tex. App.--Waco 1999, no pet.) (noting that "primary business" is
sufficient to provide person of common intelligence with notice of forbidden
conduct); Mayo v. State, 877 S.W.2d 385, 388-89 (Tex. App.--Houston [1st
Dist.] 1994, no pet.) (rejecting vagueness challenge against ordinance, finding
that "enterprise" and "primary business" were sufficiently clear). 
7. The "50-50" rule is used by HPD and is not set forth in the ordinance or used
in case law for determining a store's "primary business." 
8. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.