**Mark T. McELROY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00036–CR.**

Court of Appeals of Texas, Dallas.

Jan. 23, 1984.

Randy Taylor, Dallas, J. Thomas Sullivan, Santa Fe, N.M., for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Asst. Dist. Atty., for appellee.

STOREY, Justice.

This appeal is from a conviction for the misapplication of construction trust funds having a value of $250 or more, a felony proscribed by TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp. 1982–1983). In two of appellant's nine grounds of error,[1] he claims that the State produced insufficient evidence to prove that he misapplied or diverted the construction funds with intent to defraud or to prove that the expenditures were not "reasonable overhead ... directly related to such construction project." After careful review of the record we agree that the State neither proved the requisite intent nor negated the

---

1. Appellant maintains in three grounds that article 5472e is void for vagueness in several respects. However, since we can dispose of this appeal on sufficiency grounds, we do not reach the constitutional argument, as we are constrained to proceed. *See State v. Coberly,* 644 S.W.2d 734 (Tex.Cr.App.1983).

exception which permits the use of the funds for reasonable overhead. Accordingly, we reverse and remand with instructions to enter an order of acquittal.

## SUMMARY OF FACTS

The record reflects that appellant contracted with Mr. and Mrs. Cox to add an additional room and a patio to their residence. The contract, dated September 28, 1978, called for a price of $17,437 and completion within eighty-three days. Following a twenty-five percent down payment, the Coxes were supposed to—and did—make payment as work progressed on the following schedule:

| Work Completed | | Amount | Date Paid |
| --- | --- | --- | --- |
| Frame | 25% | $4,359. | Nov. 26 |
| Roof | 25% | $4,359. | Dec. 6 |
| Brick | 15% | $2,016. | Jan. 18 |
| Completion | 10% | $1,743. | — |

Five days after execution of the contract, appellant put five or six employees to work on the foundation. The foundation was completed at the end of October. On November 26 Mrs. Cox made the first progress payment after the frame was up. After appellant finished the roof during the first part of December, Mrs. Cox wrote him a check for the next installment. Appellant took some time off from the project over the holidays but returned to continue work in January. The record shows that Mrs. Cox made the next progress payment on January 18, 1979. Mrs. Cox testified that soon after the January payment, appellant took his men off her project to work on another one. Coker, a carpenter, testified that March 22 or 23 was the last day on the job.

The State relied on four dishonored payroll checks written on March 16 and 23 to establish the date on or about which the offense occurred. The three workers who were payees on these checks were also working on a church for appellant around the same time. It is unclear from the record whether the dishonored checks were payment solely for work on the Coxes' house.

The State introduced numerous checks drawn on two of appellant's business checking accounts to establish that appellant used the funds for purposes other than labor, materials, or reasonable overhead expense in connection with the Cox project. Balance statements on two of appellant's three accounts for the duration of the project were also introduced in evidence. The State showed that one of these accounts had a negative balance at the end of September 1978 and, after deposit of the initial payment from the Coxes on September 29, 1978, certain checks and bank charges were paid from the account. However, the State did not show the balance of the payroll account when the project began. The State did not trace the source of funds from this project to uses other than the Cox project. Additionally, the State did not show that all deposits in the business accounts came from the Coxes. For example, the State did not show the source of an October 20 deposit of $6,058 to one account. The record reflects that this deposit could not have come out of the payments from the Coxes. Thus the State did not show that these were construction funds. The State's evidence of diversion of the construction funds consists of checks such as the following:

### PAYEES

| Date | Payee | Amount | |
| --- | --- | --- | --- |
| Nov. 2 | Marsha McElroy | $1,000 | |
| Nov. 13 | Chivas Square Apartments | 300 | (N.S.F.) |
| Nov. 17 | Mark McElroy | 175 | (N.S.F.) |
| Nov. 29 | Mark McElroy | 175 | (N.S.F.) |
| Dec. 7 | B & B Liquor (Cashier's check) | 1,006.64 | |
| Dec. 10 | Chivas Square Apartments | 300 | |
| Dec. 15 | Mark McElroy | 225 | |
| Dec. 18 | First National Bank | 544.82 | |
| Jan. 19 | General Telephone | 228.13 | |
| Jan. 26 | Mark McElroy | 100 | |
| Mar. 7 | General Telephone | 118.74 | (N.S.F.) |

Appellant testified that he made many of his business payments with cash. The record reflects that appellant surely made some payments with cash because numerous materials were purchased which were not paid for by check. The State introduced these checks in evidence by the testi-

mony of bank officers who testified that these were true records of the banks. However, the State did not show the purpose or disposition of the proceeds of the checks that it claimed to be diversions or misapplications of funds. For example, appellant testified that he delivered the $1,006 cashier's check to B & B Liquor on December 7 to cover his company's payroll checks cashed at that store. The State did not bring in the payees of this or any of the other checks to show what was done with the proceeds of these checks.

## INTENT TO DEFRAUD

■ Appellant contends that the evidence is insufficient in two respects: (1) It fails to show that he misapplied or diverted any funds with intent to defraud; and (2) it fails to negate that the disbursements the State relied upon were reasonable overhead of the project. First we address the evidence offered to prove culpable mental state. The pertinent portions of article 5472e provide as follows:

*Construction payments and loan receipts declared trust funds*

1. All moneys or funds paid to a contractor or subcontractor ... under a construction contract for the improvement of specific real property in this state ... which are secured ... by a lien on the specific property to be improved are hereby declared to be Trust Funds for the benefit of ... mechanics ... or materialmen who may ... furnish labor or material ...; *provided, however, that moneys paid to a* contractor or subcontractor ... *may be used to pay reasonable overhead* ... directly related to such construction contract. ...

*Wrongful disbursement, use or retention of trust funds*

2. Any Trustee, who shall, directly or indirectly, *with intent to defraud,* retain, use, disburse, misapply, or otherwise divert, any trust funds, or part thereof, as defined in Section 1 of this Act, without first fully paying and satisfying all obligations of the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, or materialmen, incurred or to be incurred in connection with the construction and improvements, for which said funds were received, shall be deemed to have misapplied said Trust Funds.... Misapplication of Trust Funds ... of the value of $250 or over shall be punished by confinement in the Department of Corrections for a period not exceeding ten years.

TEX.REV.CIV.STAT.ANN. art. 5472e, §§ 1, 2 (Vernon Supp. 1982–1983) (emphasis added). The State contends that the "record reflects that the [a]ppellant used the Coxes' money for expenses other than those which arose from the construction project." Although the State correctly concedes that it has the burden of proving a misapplication under the statute, we disagree with the conclusion that it met that burden. Under this statute the State must prove intent to defraud in the accused's payments for purposes other than the construction project and its related expenses.

When "intent to defraud is the gist of the offense, the State must prove facts from which such an intent is deducible beyond a reasonable doubt and, in the absence of such proof, a conviction will not be justified." *Stuebgen v. State,* 547 S.W.2d 29, 32 (Tex.Cr.App.1977). For example, in *Knapp v. State,* 504 S.W.2d 421 (Tex.Cr. App.1974) (on motion for rehearing), the court noted that the mere showing of a taking of $1,200 of stamps would have been insufficient to show "intent to deprive the [State] of the value" of the stamps and to appropriate them to the accused's own use. In *Knapp* the State showed other evidence of intent, namely, that the accused exchanged the same amount and type of stamps for a pickup truck. *Id.* at 437. Similarly, in the case at bar, the State did not prove that appellant gave the proceeds of the checks to a person other than one who was authorized to receive those proceeds. For example, the State could have attempted to prove its allegation that appellant wrongfully disbursed $1,006 to the B & B Liquor store by showing what items, if any, appellant purchased at the store. Furthermore, the State did not

show that the $1,006 *cashier's check* payable to B & B Liquor came out of the construction funds.

■ The Court of Criminal Appeals in *Stuebgen* gave some guidance as to how an offense requiring intent to defraud fits into the scheme of culpable mental states in TEX.PENAL CODE ANN. § 6.03 (Vernon 1974). In a forgery case, under *Stuebgen*, the State must prove that the accused knew the instrument was forged to show intent to defraud. Hence, intent to defraud offenses fall under the intentional or knowing culpable mental state categories. *See Stuebgen*, 547 S.W.2d at 32. Intent to defraud may be shown by circumstantial evidence.

■ Here, to circumstantially prove intent to defraud, the State relies upon various checks made out to payees other than subcontractors or materialmen. However, the checks were insufficient proof of intent to defraud because the State did not prove that the payees of these checks received the proceeds of the checks and that they did not merely cash appellant's checks. Even if the State had proven that the payee of each of these checks received the proceeds of the check, the State did not prove beyond a reasonable doubt that appellant knew that the checks were drawn on the construction trust funds because the State did not trace the construction funds to the alleged misapplications of them to the exclusion of other sources of those payments. For example, appellant may have intended the deposit of $6,058 on October 20 to be the source of these payments to third parties. The State did not show that the source of this deposit was a payment by the Coxes, and, in fact, the three payments by the Coxes are specifically traceable to deposits other than the $6,058 deposit.

■ Similarly, the State could not prove intent to defraud by showing an extraneous construction project in which appellant also drew checks to third parties while failing to pay a plumber for work performed. This is so because the proof of the extraneous transaction did not tend to prove a violation of article 5472e with intent to defraud. Proof of an extraneous transaction that is alleged to constitute an offense should not be permitted "unless the commission of the other crime is clearly proved and the accused is shown to be the perpetrator." *Thompson v. State*, 615 S.W.2d 760, 761 (Tex.Cr.App.1981); *Sanders v. State*, 604 S.W.2d 108, 111 (Tex.Cr. App.1980); *Eanes v. State*, 546 S.W.2d 312, 315 (Tex.Cr.App.1977); *cf. Landers v. State*, 519 S.W.2d 115, 117 (Tex.Cr.App. 1974) ("It was incumbent upon the State to prove that such exhibit was a forgery and that appellant was connected with it."). Without holding that the admission of the extraneous offense was harmful or reversible error, we conclude that proof of the extraneous transaction was not relevant to a material issue in the case. *See Sanders*, 604 S.W.2d 111; *Landers*, 519 S.W.2d at 118. The actual *misapplication* of construction funds with intent to defraud is a material issue in the case. Proof of the extraneous transaction proved nothing more than was proven in the charged offense. The proof of these transactions did not show a misapplication of the Coxes' funds. Hence, evidence of the extraneous transaction cannot assist in ruling on the sufficiency of the evidence.

In two recent prosecutions of contractors under the general theft statute, the Court of Criminal Appeals held that the evidence concerning the use of construction funds was insufficient to establish the requisite intent for theft by deception. *Peterson v. State*, 645 S.W.2d 807 (Tex.Cr.App.1983) *(en banc); Phillips v. State*, 640 S.W.2d 293 (Tex.Cr.App.1982). In those cases, the State had to prove that the construction funds were obtained by deception with the intent to misappropriate them. In *Peterson*, the court remarked: "The fact that there were unpaid bills does not show appellant did not use the $58,000 given him by [the homeowner] to pay for materials as promised. Consistent with the proof ... is the possibility that appellant spent all of the $58,000 on materials, and the unpaid bills relied on by the State were the result of cost overruns." Without mentioning the duty imposed by article 5472e as to the use of construction contract installments, the

Court of Criminal Appeals held that the State failed to prove that the installments were for the exclusive use of suppliers and that Peterson received the payments intending not to pay the suppliers. The court added that even if the owner directed Peterson to pay only suppliers out of the funds, the State failed to prove that the funds were not spent on materials, because there was no evidence to show what happened to any of the total amount paid. This last point applies with equal force to the proof of misapplication of funds in this case: The State did not prove that the funds received from the Coxes were not spent on labor, materials, and overhead directly related to the project. Consistent with all the testimony and exhibits in the record are the possibilities: (1) that the checks drawn on McElroy Construction's account and payable to persons unrelated to the project were cashed and the proceeds were used on the project; (2) that the checks were drawn against appellant's own funds in the third account for which there was no balance statement in the record; or (3) that these checks were "reasonable overhead" directly related to the project. *See also Jensen v. First City National Bank*, 616 S.W.2d 452 (Tex.Civ.App.—Houston [14th Dist.] 1981), *writ ref'd n.r.e. per curiam*, 623 S.W.2d 924 (1982) (insufficient evidence in civil action involving article 5472e).

◼ Since *Peterson* was not an article 5472e case and is not directly in point on the issue of proof, we draw on cases under other statutes in which proof of the use or appropriation of the proceeds of a check is required. For example, to prove misappropriation when the State charges theft by deception with a check, it is necessary to prove not only that the check was given to the accused in the amount charged, but also that the accused cashed the check which subsequently cleared through the drawer's bank thus reducing the funds in the drawer's account. *See Compton v. State*, 607 S.W.2d 246, 252 (Tex.Cr.App. 1979) (on rehearing en banc); *Watkins v. State*, 438 S.W.2d 819, 821 (Tex.Cr.App.

1969); *Paiz v. State*, 167 Tex.Cr. 496, 320 S.W.2d 827 (1959). In the context of the more complex protective scheme of article 5472e, the gist of the offense is the misuse of the funds by payment for purposes other than the project rather than the mere taking of money from its owner. Just as the State in a case of theft of a check by deception must show that the accused accomplished his purpose of misappropriating the funds by cashing or negotiating the check, the State must show under article 5472e that the contractor actually applied the value of the check to a forbidden purpose thereby intending to deprive subcontractors and materialmen of their compensation.[2]

◼ Where a similar question arose in a Florida decision under a statute of the type involved here, the court reversed the conviction of the corporate officer who had endorsed the check given in payment of the construction work because "the application of the proceeds of this check was not proved nor was the amount involved established." *Silvestri v. State*, 122 So.2d 502, 503 (Fla.Dist.Ct.App.1960). In our case, the State went a step further than the prosecution in *Silvestri* to show that checks were drawn on the business operating account to various payees, but the State still did not show "the application of the proceeds." As in *Silvestri*, "the inference from [the accused's] actions is susceptible to a reasonable interpretation other than his guilty participation ...." *Id. See also State v. McConnell*, 201 Neb. 84, 266 N.W.2d 219 (1978). We conclude that proof of checks issued to parties who apparently were not related to the project without tracing the proceeds of the checks will not support the proof of intent required by article 5472e.

REASONABLE OVERHEAD EXPENSES

Additionally, we conclude that the State failed in its proof because it did not negate the statutory exception for "reasonable overhead." First, it must be decided

---

**2.** The State relied in its indictment and at trial upon fund misapplication rather than fund *re-*

*tention,* which is also a violation of article 5472e.

whether the "reasonable overhead" provision is an exception or a defense. We conclude that it is an exception.

█ The general provisions of the Penal Code are applicable to offenses defined outside the Code "unless the statute defining the offense provides otherwise." TEX. PENAL CODE ANN. § 1.03(b) (Vernon 1974). In *Honeycutt v. State*, 627 S.W.2d 417 (Tex.Cr.App.1982), the court found "the plain intent of [§ 1.03(b)] to be that only an act of the legislature may remove an offense from the general principles established in the first three titles of the Code." *Id.* at 423. The general provisions of concern here are those which define exceptions and defenses. TEX.PENAL CODE ANN. §§ 2.02, 2.03 (Vernon 1974).

█ Subsection (a) of Section 2.02 provides that all exceptions are labeled as follows: "It is an exception to the application of ...." Subsection (c) provides, however, that "[t]his section does not affect exceptions applicable to offenses enacted prior to the effective date of this code." Hence, the legislature intended to allow certain exculpatory matters of proof in penal statutes outside of the code to be exceptions despite the absence of the label required by subsection (a). The State has the burden to negate the existence of an exception in the charging instrument and to prove beyond a reasonable doubt that the exception is not applicable. TEX.PENAL CODE ANN. § 2.02(b) (Vernon 1974).

█ On the other hand, with a defense, once the evidence raises the issue, the State must disprove the defense beyond a reasonable doubt, provided the court charges the jury as to the existence of the defense. TEX.PENAL CODE ANN. § 2.03(d) (Vernon 1974) (Practice Commentary), *construed in Luck v. State*, 588 S.W.2d 371, 375 (Tex.Cr.App.1979) (en banc), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). The failure to request an instruction on a defense waives any error stemming from such failure. *White v. State*, 495 S.W.2d 903 (Tex.Cr. App.1973). Section 2.03 also provides that "[a] ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense." TEX. PENAL CODE ANN. § 2.03(e) (Vernon 1974).

█ Because evidence concerning the "reasonable overhead" purpose of payments alleged to be fraudulent misappropriation of construction funds is in the nature of inferential rebuttal proof tending to negate the statutory elements of intent to defraud and misapplication of the funds for purposes other than the expenses of the project, it is not a "ground of defense" under TEX. PENAL CODE ANN. § 2.03(e) (Vernon 1974). The proof of the offense calls for some of the same evidence required to disprove the exception. *Cf. Stump v. Bennett*, 398 F.2d 111, 199–20, 122 (8th Cir.) (evidence of a defense impermissibly shifted burden of persuasion to defendant to negate indispensible elements of the crime), *cert. denied*, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968). Further, the proviso for "reasonable overhead" is contained in the definition of the funds that article 5472e declares to be trust funds. It appears to be stated as another proper application of funds received for construction other than labor or materials. Under the statute, a defendant is not required to show that payments went only to laborers and materialmen. It would be unreasonable to require a defendant to prove the use of his funds as "reasonable overhead" while the State has to prove the funds were not used for the direct expenses of the job. Since the "reasonable overhead" provision is not a ground of defense, is not labeled as a defense, and is not excluded from the general provisions of the penal code, it must be an exception. While it is not labeled as an exception either, section 2.02, permits an unlabeled exception in a law predating the code to remain an exception. Despite the language in section 2.03(e), the Court of Criminal Appeals has recognized that a penal statute outside of the Code may contain exceptions as well as defenses. *See Threlkeld v. State*, 558 S.W.2d 472 (Tex.Cr.App.1977) (dictum).

Having concluded that "reasonable overhead" is an exception, it follows that under section 2.02, the State had to prove that the appellant's checks to payees such as GTE, Chivas Apartments, and First National Bank were not "reasonable overhead." We conclude that the State failed to carry that burden because it did not show the application of these checks. For example, the State could have introduced evidence of the bills from GTE for which the checks were payment. The State did not prove that the appellant allocated his overhead expenses in an unreasonable manner. *See North Texas Operating Engineers v. Dixie Masonry*, 544 F.Supp. 516, 519–20 (N.D.Tex.1982) (In civil case under 5472e, because overhead, by definition, includes "expenses of a business, without regard to the outlay on a particular contract," overhead expenses need not be directly traceable to a particular project but need only reasonably reflect the expenses associated with each project). In fact, the State did not prove which payments were made for materials, for labor, and for overhead expenses, respectively, and did not prove which payments came out of the Coxes' installments rather than from some other source. We hold, therefore, that the State failed to sustain its burden of proving that the checks offered were not overhead expenses related to this project.[3]

Accordingly, we reverse and remand with instructions to enter an order of acquittal.

ALLEN and CARVER, JJ., join in this opinion.

AKIN, Justice, concurring.

Although I concur in the judgment of the majority that the judgment of conviction should be reversed and a judgment of acquittal rendered, I cannot agree with the majority's opinion because the majority fails to address the intent of the legislature in enacting TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp. 1982–1983) and because the majority opinion incorrectly con-

cludes that overhead is an exception, rather than a defense, under the statute. Accordingly, I am compelled to state my views in this concurring opinion.

Neither the majority nor the dissenting opinion construes TEX.REV.CIV.STAT. ANN. art. 5472e (Vernon Supp. 1982–1983), which states:

Section 1. All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, and all funds borrowed by a contractor, subcontractor, owner, or any officer, director or agent thereof, for the purpose of improving such real property which are secured in whole or in part by a lien on the specific property to be improved are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; provided, however, that moneys paid to a contractor or subcontractor or borrowed by a contractor, subcontractor, or owner may be used to pay reasonable overhead of said contractor, subcontractor, or owner, directly related to such construction contract. The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby made and constituted a Trustee of such funds so received or under his control or direction.

Sec. 2. Any Trustee, who shall, directly or indirectly, *with intent to defraud*, retain, use, disburse, misapply, or otherwise divert, any trust funds, or part thereof, as defined in Section 1 of this Act, without first fully paying and satisfying all obligations of the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, or materialmen, in-

---

**3.** In *Peterson*, Judge Onion observed that "[f]rom much in the record it appears ... that the criminal law process was being utilized to collect a debt arising out of a contract...."

645 S.W.2d at 812. Additionally, here, it appears the process was used to punish appellant for shoddy workmanship.

curred or to be incurred in connection with the construction and improvements, for which said funds were received, shall be deemed to have misapplied said Trust Funds. Misapplication of Trust Funds hereunder, under the value of $250, shall be punished by imprisonment in jail not exceeding two years and by fine not exceeding $500, or by such imprisonment without fine. Misapplication of Trust Funds hereunder, of the value of $250 or over shall be punished by confinement in the Department of Corrections for a period not exceeding ten years. [Emphasis added].

From the language of this statute a question exists with respect to whether the offense is committed when the defendant contractor diverts trust funds with intent to defraud the workmen or materialmen or whether an offense is committed when the contractor fails to pay workmen or materialmen because the funds are insufficient, such as here, and where certain funds were previously diverted to purposes other than those specified in the statute, I would hold that the statute was violated when the contractor diverted any trust funds with intent to defraud either workmen or materialmen, regardless of whether the contractor ultimately paid the workmen from other sources. Thus, when any funds are diverted for purposes other than paying workmen, materialmen or reasonable overhead, the statute is violated, if the diversion is with the intent to defraud. Consequently, the State had the burden to prove that each diversion of trust funds for purposes other than paying workmen and materialmen was with the intent to defraud the workmen and materialmen.

Since under the language of the statute, the State must prove not only a diversion of funds, as the dissent seems to imply, but also must prove that the defendant diverted the funds with "an intent to defraud" the workmen and materialmen. Thus, the question presented is what did the legislature intend the phrase "intent to defraud" to mean within the ambit of article 5472e? With respect to the phrase "intent to defraud," I have been unable to find any Texas case defining this term. Black's

Law Dictionary (381 rev. 5th ed. 1979) defines this phrase as follows:

*Intent to defraud* means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.

Thus, under this definition, which appears to be a correct one, the State must prove that the diversion of trust funds was done with the intent to deceive either workmen or materialmen so as to induce them to rely to their detriment upon the deception. In applying this definition of intent to defraud, there is no evidence to support a finding that the defendant had such an intent when funds were diverted.

I cannot accept the definition of "intent to defraud" as set forth in Justice Guillot's dissenting opinion, where he defines "intent to defraud" to mean an "intent to impair the funds which must be kept for the benefit of the workers and suppliers." Under Justice Guillot's definition, intent to defraud becomes meaningless because any diversion of funds for any reason would impair the trust fund. In my view, the legislature's intent to require something more than an impairment of the trust fund is shown by the language of section 3 of article 5472e which provides:

Sec. 3. Where Trust Funds are paid, misapplied, used, or otherwise diverted, *in such a manner that such act constitutes a violation of this Act* and some other offense punishable under the laws of the State of Texas, the party thus offending shall be amenable to prosecution at the state's election for misapplication of trust funds under this Act or for such other offense as may have been committed by him. [Emphasis added].

From this language it is obvious that the legislature intended more than a mere diversion or "impairment" to constitute the offense specified in section 2 by the use of the language "in such a manner that such act constitutes a violation of this Act." When the legislature used this phrase, it

re-emphasized that the diversion must be committed with the intent to defraud.

Both the majority and dissenting opinions agree that circumstantial evidence must necessarily be resorted to so as to prove the intent to defraud which is the crux of the offense. I would hold that the State failed to prove that each diversion was done with the intent to defraud, which any rational trier of fact should require beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (N. 12), 99 S.Ct. 2781, 2789 (N. 12), 61 L.Ed.2d 560 (1974); *see Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Cr.App.1983). For example, when the defendant deposited the first payment from the Coxes (the owners) into an account that was already overdrawn, the State had the burden to prove that this act was done with the intent to defraud the workmen on the job as well as the materialmen who furnished materials for the project. In this respect, the appellant may have thought at the time that he had enough funds from the contract to pay all workmen and materialmen, apart from these funds. With respect to each diversion of trust funds, the State failed to prove that even one diversion was with the intent to defraud the workmen and the materialmen. The State alleged in the indictment that the offense occurred when the appellant issued insufficient fund checks to three of his workmen although the record is unclear as to whether these checks were issued for work on the Cox project or whether they were issued with respect to a subsequent job. The State's proof also failed in this respect. Accordingly, I concur in the majority's conclusion that the State failed to prove that the appellant diverted funds with intent to defraud with respect to each diversion.

Although I agree with the majority that the State failed to prove that the appellant diverted trust funds with the intent to defraud, I cannot agree with the majority that "reasonable overhead" is an exception, thus placing the burden on the State to negate "reasonable overhead" in the charging instrument and to prove beyond a reasonable doubt that the exception is inapplicable. Instead, I would hold that the "reasonable overhead" provision in the statute is a defense with the burden upon the defendant to adduce evidence with respect to his reasonable overhead. Even in this situation the State has the burden to prove that these "overhead" expenses were not related to the construction project and thus were justified as such.

TEX.PENAL CODE ANN. § 2.02 (Vernon 1974) defines "Exceptions" while § 2.03 defines a "Defense." Section 2.02(a) and (c) provide:

(a) An exception to an offense *in this code* is so labeled by the phrase: "It is an exception to the application of...." [Emphasis Added]

(c) *This section does not affect exceptions applicable to offenses enacted prior to the effective date of this code.* [Emphasis Added]

Since TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp. 1982–1983) was enacted in 1967, effective August 28, 1967, and, since Article 5472e is not in the Texas Penal Code, the majority's reliance upon these provisions to hold that overhead expenses are an exception, rather than a defense, is misplaced. Instead, by the precise language of section 2.02, the present question is not determined by that section. Thus, I would hold that Section 2.02 has no application to the present case.

TEX.PENAL CODE ANN. § 2.03(e) (Vernon 1974) does, however, pertain to Article 5472e. Subsection 2.03(e) provides: "A ground of defense *in a penal law* that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequence of a defense." [Emphasis Added]. Because without question Article 5472e is a "penal law," in the sense that a person may be deprived of his liberty for the violation of that statute, Subsection 2.03(e) is controlling as the dissenting opinion by Justice Guillot correctly notes. *Goss v. State*, 582 S.W.2d 782, 784 (Tex.Cr.App. 1979); *Broyles v. State*, 552 S.W.2d 144, 147 (Tex.Cr.App.1977); *Bocanegra v. State*, 552 S.W.2d 130, 131–32 (Tex.Cr.App. 1977). This is true because Article 5472e does not plainly label "reasonable overhead" as an exception. Accordingly, the

burden to adduce evidence and to request appropriate jury instructions on reasonable overhead should be upon the defendant charged under this statute, rather than the State.

STEPHENS, J., joins in this opinion.

WHITHAM, Justice, concurring.

I concur in the result. I write to express my view that TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp. 1982–1983), is unconstitutionally vague on its face because of the following provision in Section 1 of the Act:

[P]rovided however, that *monies* paid to a contractor or subcontractor or borrowed by a contractor or subcontractor, or owner *may be used to pay reasonable overhead* of said contractor, subcontractor, or owner, directly related to such construction contract. [Emphasis added.]

Accordingly, I would sustain appellant's first ground of error and acquit.

Under Article 5472e the trust funds "may be used to pay reasonable overhead ... directly related" to the contract. Article 5472e does not define "reasonable overhead" or "reasonable overhead directly related to such construction contract." Appellant argues that the statute is unconstitutionally vague in that it fails to delineate the extent to which payment can be made of ongoing business costs apart from particular overhead incurred on a given job. I agree.

A penal statute must be drafted with sufficient clarity to enable the individual to understand exactly what conduct is proscribed if it is to withstand constitutional scrutiny. *Connally v. General Construction Company,* 269 U.S. 385, 393, 46 S.Ct. 126, 128, 70 L.Ed. 322 (1926). A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally* at 391, 46 S.Ct. at 127. The underlying principle is that no man shall be held criminally responsible for conduct which he could not rea-

sonably understand to be proscribed. *Palmer v. City of Euclid, Ohio,* 402 U.S. 544, 546, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971). Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). As put by the Court of Criminal Appeals in *Ex Parte Halsted,* 147 Tex. Cr.R. 453, 182 S.W.2d 479, 482 (1944):

Under our system of government, the legislature has the power to pass any and all laws which to it may seem proper, so long as same violate no provisions of our State or Federal Constitutions. A law must be sufficiently definite that its terms and provisions may be known, understood, and applied. An Act of the legislature which violates either of said Constitutions, or an Act that is so vague, indefinite, and uncertain as to be incapable of being understood, is void and unenforcible [sic]. A void law affords no basis for a criminal prosecution.

And later in *Ex Parte Granviel,* 561 S.W.2d 503, 511 (Tex.Cr.App.1978) (*en banc*), quoting from *Halsted:*

... a "law must be sufficiently definite that its terms and provisions may be known, understood, and applied. An Act of the legislature which violates either of said Constitutions [Federal or Texas], or an Act that is so vague, indefinite, and uncertain as to be incapable of being understood, is void and unenforcible" [sic].

Where the word "reasonable" is at issue as a measure of a person's actions I am persuaded by the reasoning in *Parks v. Libby-Owens-Ford Glass Co.,* 360 Ill. 130, 195 N.E. 616, 622 (1935), in which the statute before the court was held unconstitutionally void for vagueness:

The expression "provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process" appears in the last part of section 1.... Each employer of

labor must place his own construction upon these general words without any guidance. Section 1 does not purport to fix a standard of conduct whereby an employer may with any degree of certainty know the duty that rests upon him under it. A device deemed reasonable by one employer might well be considered unreasonable by another. ... The result is that each employer is required to determine, at his peril, what is a reasonable and approved device. If a court or a jury subsequently determines that the device used was not reasonable and approved he is subject to unlimited liability for his mistake of judgment. An honest attempt to comply with the law will not of itself afford him a defense.

In my view the trustee in the present case must guess as to what the statute means when it refers to "reasonable overhead ... directly related" to the contract. Therefore, the statute is not drafted with sufficient clarity to enable an individual to understand exactly what conduct is proscribed and is so vague, indefinite, and uncertain as to be incapable of being understood. That the statute lacks the required clarity to impose criminal sanctions is understandable. The statute is contained in the civil statutes, not the criminal code. The statute obviously found its way into the civil statutes in order to impress upon certain persons the necessity of paying their debts—or else. Nevertheless, I cannot agree that when invoking the "or else" the State of Texas may place those persons in the position of guessing the amount of "reasonable overhead ... directly related" to a construction contract which will meet with judge or jury approval and going to the penitentiary if they guess wrong. In my opinion that is precisely what the minority permits the State of Texas to do.

It follows that I would hold Article 5472e unconstitutionally vague on its face and thus void and unenforceable. Therefore, there exists no valid law denouncing as a crime the acts charged against appellant. Accordingly, I concur that the trial court's judgment must be reversed and the case

remanded with instructions to enter a judgment of acquittal.

VANCE, J., joins in this opinion.

GUILLOT, Justice, dissenting.

I respectfully dissent from the majority and the concurrence.

The first basic fallacy in the majority's reasoning is that it overlooks the very purpose of TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp. 1982–1983) which is to make the general contractors of this state trustees—involuntary trustees, but trustees nevertheless. As a result of the statute, the general contractors owe a fiduciary duty to their subcontractors and suppliers and must act towards them with good faith. *See Tucker v. Dougherty Roofing Co.*, 137 S.W.2d 884, 887 (Tex.Civ.App.—Dallas 1940, writ dism'd).

The second basic fallacy in the majority's reasoning is that it requires the State to trace the proceeds of checks issued by the general contractor in order to establish that the payees of the checks received the proceeds rather than cashed the checks. This is necessary, it says, to show intent to defraud. But the statute doesn't require tracing of checks in order to prove intent. What is required is simply to show a disbursement, use, retention, misapplication, or other diversion of trust funds with the intent to defraud. Intent is most often proven circumstantially. Proof of similar schemes emerging from extraneous offenses is most often the method used. *See Crawley v. State*, 513 S.W.2d 62 (Tex.Cr. App.1974); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). To demonstrate the fallacy of the majority's reasoning, consider the sheer folly of the district attorney's investigator asking someone at General Telephone if the checks for $228.13 or $118.74 were cashed by them for appellant or if they were payment for a phone bill.

The third basic fallacy in the majority's reasoning is its analysis of intent to defraud and what the State must prove in order to establish it. The most difficult problem in interpreting the statute is the

meaning of "intent to defraud." Does it mean that the trustee, at the time of each separate misapplication, must necessarily intend not to pay his workers and suppliers? If so, the statute has little meaning and no practical effect because under that interpretation the statute would permit him to divert the funds if he expects to borrow the money, or to get money from another job to pay his bills for labor and materials on the job in question. The language of the statute shows that it was intended to make each contractor a trustee of the funds received from each job and to require him to keep those funds intact, except for payments to workers and suppliers, until all his workers and suppliers are paid. Clearly, the legislative purpose was to stop the practice of some contractors to use funds from one construction job to pay bills due for another or to pay the contractor's own living expenses before all workers and suppliers have been paid. "Intent to defraud," therefore, must mean intent to impair the fund which must be kept for the benefit of the workers and suppliers. A trustee who misapplies or diverts trust funds may not be excused on the ground that he really did not intend to cause his beneficiary any loss. Consequently, the State, in proving intent to defraud, need not establish that the trustee, at the time of diverting the funds, had no intention to pay his workmen from some other source. The intent to divert, with knowledge of impairment of the fund, is sufficient intent to defraud.

If this intent is not shown by the evidence concerning appellant's diversion of funds from the Cox job, that intent is clear enough when this evidence is considered along with the evidence of appellant's handling of the job at Wesley-Rankin Community Center at about the same time. The evidence shows that on the Wesley-Rankin job appellant's conduct followed a similar pattern: diversion of funds to other purposes, poor workmanship, failure to complete the work, and failure to pay expenses incurred on the job. The theory of this extraneous proof is that, if one instance does not establish intent, the pattern of similar conduct shown by two or more instances is enough to do so. *Albrecht v.*

*State,* 486 S.W.2d 97, 100 (Tex.Cr.App. 1972).

I conclude that the evidence is sufficient to convince a rational trier of fact that beyond a reasonable doubt the appellant misapplied and diverted trust funds with intent to defraud in that he did not intend to keep the trust funds intact for the benefit of his workers and suppliers on this job.

The final basic fallacy in the majority's reasoning is that it concludes that "reasonable overhead" constitutes an exception rather than a defense. I disagree with the majority's characterization of evidence of "reasonable overhead" being in the nature of an inferential rebuttal. In civil actions for the misapplication of trust funds, the trustee must plead and prove that his expenses in administering the trust were reasonable and necessary. *See Corpus Christi Bank & Trust v. Roberts,* 587 S.W.2d 173, 182 (Tex.Civ.App.—Corpus Christi 1979), *aff'd as modified,* 597 S.W.2d 752 (Tex.1980). In short, he must account for the use of the funds. The use of trust monies in administering a trust is a defense in civil law and also in criminal law. With this brief review of the basic errors in the majority and concurring opinions, I address the appellant's grounds of error.

In his first three grounds of error, appellant contends that his conviction is void because TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp.1982–1983) is unconstitutionally vague and overbroad. In pertinent part, article 5472e reads as follows:

Construction payments and loan receipts declared trust funds

Section 1. All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, and all funds borrowed by a contractor, subcontractor, owner or any officer, director or agent thereof, for the purpose of improving such real property which are secured in whole or in part by a lien on the specific property to be improved are hereby declared to be Trust Funds for the benefit of the artisans,

laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; provided, however, that moneys paid to a contractor or subcontractor or borrowed by a contractor, subcontractor, or owner *may be used to pay reasonable overhead* of said contractor, subcontractor, or owner, *directly related to such construction contract.* The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby made and constituted a Trustee of such funds so received or under his control or direction.

Wrongful disbursement, use or retention of trust funds

Sec. 2. Any Trustee, who shall, directly or indirectly, *with intent to defraud,* retain, *use, disburse, misapply, or otherwise divert,* any trust funds, or part thereof, as defined in Section 1 of this Act, *without first fully paying and satisfying all obligations* of the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, or materialmen, incurred or to be incurred in connection with the construction and improvements, for which said funds were received, *shall be deemed to have misapplied said Trust Funds.* Misapplication of Trust Funds hereunder, under the value of $250, shall be punished by imprisonment in jail not exceeding two years and by fine not exceeding $500, or by such imprisonment without fine. Misapplication of Trust Funds hereunder, of the value of $250 or over shall be punished by confinement in the Department of Corrections for a period not exceeding ten years. [Emphasis added].

For a penal statute to be void for vagueness, it must either forbid or require the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, thus violating the fair notice requirements of due process of law. *Papachristou v. City of Jacksonville,* 405 U.S.

156, 92 S.Ct. 839, 31 L.Ed. 110 (1972); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

Regulatory statutes governing business activity are to be allowed greater leeway in applying the fair notice test. Such statutes are not automatically invalidated as vague because of difficulty in determining whether marginal offenses fall within their language. *See Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980), and cases cited therein. Furthermore, the fact that a statute requires specific intent has been given weight by courts rejecting void for vagueness challenges. *Id.* at 689. In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. TEX.REV.CIV.STAT. ANN. art. 5429b–2, § 3.01 (Vernon Supp. 1982–1983); *see Parr v. State,* 575 S.W.2d 522 (Tex.Cr.App.1978).

Appellant's first ground of error is that article 5472e is unconstitutionally vague by failing to give notice of what conduct is proscribed because it does not adequately define the following terms: (1) "use, disburse, misapply, or otherwise divert"; (2) "obligations"; and (3) "reasonable overhead." I note that a statute is not unconstitutionally vague because the words or terms are not specially defined. *Koah v. State,* 604 S.W.2d 156 (Tex.Cr.App.1980); *Floyd v. State,* 575 S.W.2d 21 (Tex.Cr.App. 1978). Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Floyd,* 575 S.W.2d at 23.

With regard to the phrase "use, disburse, misapply, or otherwise divert," appellant argues that the statute fails to create a scheme of priorities. The alleged constitutional deficiency is that the trustee is not advised as to the order in which the differ-

ent costs of construction, e.g., material costs as opposed to wages, are to be paid. I conclude that article 5472e is not unconstitutional for this reason. The trustee is obligated to pay for both materials and wages, and the statute protects both classes of beneficiaries equally. Appellant fails to indicate why one class of beneficiaries should be accorded preferential treatment, and, further, I have not found any reason in law or logic that compels such a scheme. The statute is not vague in this respect.

Next, appellant complains that article 5472e is vague because it fails to distinguish between legal and non-legal "obligations." His argument is that the statute is deficient because it does not exclude from criminal liability situations in which the trustee lawfully withholds payment, e.g., when an employee or subcontractor performs substandard work and is in breach of contract. I disagree. In order to obtain a conviction, the statute requires that any use or misapplication of trust funds resulting in the nonsatisfaction of such obligations be done with "intent to defraud." When a trustee withholds payment or retains funds because of a legitimate dispute over whether payment is lawfully due, then intent to defraud is not present and a violation of the statute has not occurred. For these reasons, I would hold that the statute does in effect distinguish between legal and non-legal obligations.

Appellant's third argument under his first ground of error is that article 5472e is vague because, in using the term "reasonable overhead," the statute fails to adequately define the extent to which trust funds can be used to pay ongoing business costs not directly related to the particular project for which the funds are received. Again, I disagree. The statute clearly states that trust funds "may be used to pay reasonable overhead ... directly related to such construction contract."

I agree with the construction of this phrase formulated by the court in *North Texas Operating Engineers Health Benefit Fund v. Dixie Masonry, Inc.*, 544 F.Supp. 516 (N.D.Tex.1982). "Overhead" is a broad term generally understood to include the continuous expenses of a business without regard to a particular contract. *Dixie Masonry, Inc.*, 544 F.Supp. at 519. The term "reasonable" was used to place a limitation on the amount of overhead expenses that could be allocated to a particular construction contract. *Id.* Overhead expenses that cannot be readily traced to a particular contract are directly related if the job could not have been obtained or completed without them. *Id.* at 520. Thus, the general administration expenses of a business can be shown to be overhead directly related to a particular construction project.

As noted by the court in *Dixie Masonry, Inc.* this provision and article 5472e, as a whole, were enacted to discourage contractors from paying the last job's expenses with the next job's financing. The requirement that overhead payments be directly related to a construction contract is to assure that funds would be nonfraudulently applied to expenses associated with ongoing construction projects. *Dixie Masonry, Inc.*, 544 F.Supp. at 520. I conclude that the challenged phrase is not unconstitutionally vague.

Viewing the statute as a whole, I cannot say that any of the terms used are incapable of being understood by persons of common or ordinary intelligence. I conclude that the defendant would be on fair notice that the conduct proscribed was (1) the misapplication of construction trust funds (2) without first fully paying all obligations owed to the statutory beneficiaries and (3) with the intent to defraud. I would overrule appellant's first ground of error.

In his second ground, appellant contends that article 5472e is unconstitutional because it fails to give notice of the penalty group into which the proscribed conduct will fall. Appellant argues that the penalty provision is ambiguous and can be interpreted to mean that the difference between felony and misdemeanor punishment is either the total sum of trust funds misappropriated or the amount of each act of misappropriation or fraud. I disagree. Section 2 of article 5472e requires the trustee to first

satisfy *all* obligations owed to *all* beneficiaries. If the trustee fails to do so, then it is a matter of proof as to the amount of funds that were received by the trustee but used for purposes other than for expenses related to the particular construction contract. In essence, the concern is with one offense involving several transactions or instances of misapplication resulting in the failure to meet payroll obligations. *See McCaleb v. State,* 537 S.W.2d 728 (Tex.Cr.App.1976); *McClelland v. State,* 390 S.W.2d 777 (Tex.Cr.App.1965), *cert. denied,* 382 U.S. 928, 86 S.Ct. 307, 15 L.Ed.2d 340 (1965). To determine the proper penalty range, I would hold that the total amount of funds misapplied with respect to a given construction contract is controlling.

In his third ground of error, appellant contends that article 5472e is unconstitutionally overbroad because it authorizes conviction for lawful activity. This is essentially the same argument made with respect to the failure of article 5472e to define the term "obligations." In this ground, appellant contends that he may be prosecuted for legally withholding payment for wages or materials. As previously discussed, the statute requires intent to defraud, and, thus, I would hold that article 5472e is not overbroad. Again, withholding payment because of a legitimate dispute over whether payment is, in fact, due does not equal fraud. I would overrule appellant's third ground.

In two grounds of error, appellant contends that his conviction is void because it is based on: (1) a fundamentally defective indictment which fails to negate a statutory exception to the offense; and (2) evidence which fails to negate the statutory exception. Both grounds rely on the assumption that, under TEX.PENAL CODE ANN. § 2.02 (Vernon 1974), the State must plead and prove that the misapplied funds were not used to pay reasonable overhead directly related to the construction contract. The State, however, has no such burden because the language of article 5472e does not specify whether this defensive issue is an exception or a defense, and, thus, TEX.PENAL CODE ANN. § 2.03(e) (Vernon 1974) controls. Section 2.03(e)

states that "[a] ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense." *See Schope v. State,* 647 S.W.2d 675 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd); *Memet v. State,* 642 S.W.2d 518 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (conviction reversed on other grounds). Furthermore, I would hold that all elements of the offense could be established without proof which negates the existence of the defensive issue, and, thus, it was not incumbent upon the State to plead and prove the nonexistence of the defense. *Baker v. State,* 132 Tex.Cr. 527, 106 S.W.2d 308 (1937); *see Kirk v. State,* 643 S.W.2d 190, 194 n. 8 (Tex.App.—Austin 1982, pet. ref'd).

In his next ground of error, appellant contends that the evidence is insufficient to support his conviction because appellant's testimony at trial conclusively established, whether by defense, affirmative defense, or exception, that all of the funds received were used on reasonable overhead. Thus, appellant argues that the State has failed to prove intent to defraud. I disagree.

The record reflects that, on September 28, 1978, appellant entered into a contract which required him to remodel a home located in Farmers Branch, Texas, for a total cost of $17,437.00. Upon signing the contract, the homeowners made an initial down payment by giving appellant a check for $4,359.25. The check was deposited into appellant's business account at Irving Bank on September 29, 1978. From this check, appellant received $3,311.25 in cash resulting in a net deposit of $1,048.00. At the time of the deposit, appellant's account had a negative balance of $4.63. Cleared against this deposit were: (1) the negative balance of $4.63; (2) a $16.00 charge for checks written before the date of the contract and returned for insufficient funds; (3) a check to General Telephone for $517.09 dated September 27, 1978; and (4) a payroll check to Jose B. Flores in the amount of $157.69 dated September 22, 1978. The State also introduced evidence that the work on the house proceeded in an

unsupervised and unworkmanlike manner; that after receiving a total of $15,693.30 appellant abandoned the project; that he failed to honor payroll checks made out to three employees who worked on the house; and that his actions at another jobsite under his supervision were substantially similar.

Appellant testified in his own behalf and stated that all funds received were used for materials or labor in connection with the remodeling project. He denied using any funds for purposes other than reasonable overhead directly related to the construction project. Appellant attempted to explain the shortage of funds and failure to complete the project by claiming that he under-estimated the cost. He admitted being financially unable to complete the project.

Since the reasonable overhead provision of 5472e is in the nature of a defense, appellant had the burden of producing evidence to raise the defense. Once the issue is raised, the State has the burden of persuasion and must disprove the defense. *Ramos v. State*, 478 S.W.2d 102 (Tex.Cr. App.1972); *Schope*, 647 S.W.2d at 681. However, this does not require the State to introduce affirmative controverting evidence to rebut the defensive theory. *Johnson v. State*, 571 S.W.2d 170 (Tex.Cr.App. 1978).

Appellant's testimony has raised a defensive issue, but, based on this record, I would hold that the State has carried its burden. The jury is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by any witness. *Johnson*, 571 S.W.2d at 173. The State's evidence clearly shows that funds, in excess of $250, received for the project were used to clear checks given for the payment of obligations incurred prior to the date of the contract. The evidence also shows that appellant failed to fulfill all obligations to laborers who worked on the project. The jury was free to disbelieve defendant's explanation of the shortage of funds, and, thus, I would overrule this ground.

Next, appellant contends that his conviction is void because it is based on a fundamentally defective indictment in that it alleges three separate and distinct offenses in a single paragraph. Appellant's contention is that TEX.CODE CRIM.PROC.ANN. art. 21.24(b) (Vernon Supp.1982–1983), which precludes joinder, has been violated because the indictment names three workers who remain unpaid for services rendered in connection with the construction project. I disagree. The indictment alleges that, with the intent to defraud, appellant misapplied funds in excess of $250.00 received:

> "under a construction contract for the improvement of specific real property, to-wit: 14260 Queens Chapel, Farmers Branch, Texas, without first fully paying and satisfying all obligations of the said Trustee to all artisans, laborers, mechanics, contractors, sub-contractors, and materialmen, to-wit: Gary Saleh, James Coker, and Walter Coker, incurred in connection with construction and improvements for which said funds were received ..."

The State is not required to plead evidence relied on, and, when the indictment tracks the language of the statute, it is a rare exception that it is legally insufficient to provide notice of the charged offense. *May v. State*, 618 S.W.2d 333 (Tex.Cr.App. 1981) *(en banc)*, *vacated*, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981), *aff'd, on remand*, 632 S.W.2d 751 (Tex.Cr.App. 1982); *Phillips v. State*, 597 S.W.2d 929 (Tex.Cr.App.1980). I would hold that the indictment tracks the language of the statute, and, in stating the names of the three laborers, it is merely pleading the evidence relied on to support the allegation that *all* obligations to *all* laborers have not been satisfied.

Appellant further contends that his conviction is void because the State failed to properly charge him with the more specific offense of theft by check, as stated in the 1978 version of TEX.PENAL CODE ANN. § 31.03 (Vernon Supp.1982–1983) and under TEX.PENAL CODE ANN. § 31.06 (Vernon 1974), or issuance of a bad check,

TEX.PENAL CODE ANN. § 32.41 (Vernon 1974). Appellant argues that the evidence shows that he merely issued bad checks and that there was no evidence that he improperly diverted any trust funds. I disagree. As previously noted, the evidence clearly shows that appellant used funds for purposes other than for the particular construction contract. Furthermore, I believe that article 5472e specifically applies to the circumstances of this case in that appellant defrauded his laborers, the class of persons to be protected by article 5472e, by misapplying construction trust funds received in connection with the particular project on which those persons worked. *See Jones v. State*, 552 S.W.2d 836 (Tex.Cr.App.1977). I would overrule this contention.

Finally, appellant contends that the trial court committed reversible error in admitting evidence of an extraneous offense. He argues that the State failed to show sufficient similarity between the charged offense and the extraneous offense to justify its admission to prove scienter or state of mind. *See Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). I believe, however, that the evidence shows an identical pattern of events in connection with another construction project which appellant undertook. An initial payment from the owner was deposited in appellant's bank account and was used to satisfy obligations unrelated to the construction project. The record further shows: (1) that the work was improperly done and poorly supervised; (2) that a plumbing subcontractor remained unpaid for services rendered in connection with the project; and (3) that appellant was paid the full amount of his bid to complete the project. I would hold that the trial court did not err in admitting this evidence to show scheme, plan, or design and intent. The jury was properly charged to only consider this evidence "in determining the intent, scheme, or design of the Defend-

ant...." I would overrule appellant's final ground.

I would affirm the conviction.

GUITTARD, SPARLING, ROWE and STEWART, JJ., join in this opinion.

SPARLING, Justice, dissenting.

I join in dissenting.

The gist of this offense is that the appellant received money for construction, and he fraudulently failed to disburse these funds to his laborers—despite his duty as a fiduciary to do so. In short, the State must prove he *didn't* pay his laborers, rather than how he *did* spend the money.

Yet the majority [1] has imposed an unprecedented duty [2] upon the State to trace the funds from the complainant to the appellant to appellant's bank account, to, and through, the hands of third persons. I would hold that the State has no such burden. Therefore, the fact that the State tried imperfectly to do that which was not required is of no consequence. In any event, what would the records of the liquor store, apartment complex, or telephone company realistically have proved? If the records indicated that cash had been received from, for instance, the telephone company, the information would have been valueless unless the State further proved how the cash was spent. If the telephone records indicated that appellant's check paid a telephone bill, that too would have been valueless unless the calls were traced to determine that their purpose was not related to this construction project. The majority has imposed an unrealistic burden upon the State.

Further, instead of viewing the evidence in the light most favorable to the verdict, the majority apparently has championed the defense espoused by appellant. For example, they write: "Appellant testified that he made many of his business pay-

---

1. Although there is actually no majority in this case, I use the word in reference to the opinion by Associate Justice Storey.

2. Tracing of funds is required by *Compton v. State*, 607 S.W.2d 246 (Tex.Cr.App.1979), and

*Watkins v. State*, 438 S.W.2d 819 (Tex.Cr.App. 1969), both cited by majority, but these cases only require that the State prove that the check was cashed or deposited—nothing more.

ments with cash," and "For example, appellant testified that he delivered the $1,006 cashier's check to B & B Liquor ..." Thus, it appears that the majority has viewed the sufficiency of the evidence from the appellant's perspective—ignoring the fundamental truth that the jury does not have to believe *anything* to which the appellant testifies. In sum, it appears that the majority has swapped its robe for a jury badge.

Another example of the majority's empathy with the accused may be found in their statement, "The record reflects that appellant surely made some payments with cash because numerous materials were purchased which were not paid for by check." Again, the majority adopts appellant's testimony. It is just as reasonable for the jury to believe from the evidence that appellant left a path of unpaid materialmen, as he did unpaid laborers. Yet the majority chooses to assume that the proceeds from a check written to an apartment house may have ended up in the hands of a lumberyard.

The majority further declares insufficient the evidence of "intent to defraud." Intent is intangible and, with few exceptions, is inferred from words spoken and acts done. Intent may be inferred from performing the overt acts of the prohibited conduct—in the present case, the receipt of the money by the trustee and the subsequent failure to pay the beneficiary laborers. The "intent" cases relied upon by the majority are theft cases,[3] which are distinguishable from this offense because of the language of the theft "by deception"[4] statute that states that the accused's failure to perform after promising to perform is in-

sufficient to prove intent "without *other* evidence of intent or knowledge" (emphasis mine). We are reminded that (1) the present case is not a theft case; (2) there is no language in article 5472e that requires "other" evidence of intent or knowledge; and (3) the appellant is, by law, a fiduciary.

If however, this is a case in which intent may not be inferred from the criminal act, an extraneous offense may be admitted to prove intent. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Cr.App.1972). Yet, the majority has concluded that an extraneous offense—the appellant's similar conduct of failing to pay a plumber, his subcontractor—was no proof of intent.[5] In so holding, the majority has effectively ignored a long line of criminal jurisprudence to the contrary. *Rogers v. State,* 598 S.W.2d 258 (Tex.Cr.App.1980); *Reger v. State,* 598 S.W.2d 868 (Tex.Cr.App.1980); *Christiansen v. State,* 575 S.W.2d 42 (Tex.Cr.App. 1979); *Crawley v. State,* 513 S.W.2d 62 (Tex.Cr.App.1974); *White v. State,* 632 S.W.2d 752 (Tex.App.—Dallas 1981, no pet.).

I encourage the reader to reread that portion of the majority opinion declaring "reasonable overhead" to be an "exception" rather than a "defense." I find no case cited nor rationale offered that would logically lead one to that conclusion. I conclude that reasonable overhead is not an exception because the statute does not label "reasonable overhead" exception and because there are only two "exceptions" in the entire penal code,[6] which indicates the hesitancy of the legislature to place the label "exception" on a defensive issue. It

---

3. The majority does cite *Stuebgen v. State,* 547 S.W.2d 29 (Tex.Cr.App.1977), a case of passing a forged instrument, which does impose an abnormal burden upon the State to prove intent (not tracing, however). Thus far, the requirements of *Stuebgen* have not been extended beyond that particular offense.

4. TEX.PENAL CODE ANN. § 31.01(2)(E) (Vernon 1974).

5. This extraneous "offense" was also a remodeling job, occurring about the same time, for

about the same price, and likewise resulted in a structural mess. When appellant was confronted by the plumber with an unpaid invoice, appellant's response was "[I haven't] been paid yet," although appellant had received 100% of the contract price. This lie is evidence of fraudulent intent. *Phillips v. State,* 488 S.W.2d 97, 100 (Tex.Cr.App.1972), *Golden v. State,* 475 S.W.2d 273, 274 (Tex.Cr.App.1972).

6. *See* TEX.PEN.CODE ANN. §§ 37.10(b), 38.04 (Vernon 1974).

is a credit to the majority to have arrived at such an imaginative conclusion.

If all else fails, a concurring opinion has declared the statute unconstitutional. We must presume a statute to be constitutional and construe it in a way to uphold its constitutionality. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Cr.App.1979). That we are not benefited by precedent defining "reasonable overhead" does not mean that we are incapable of understanding its meaning. I see nothing unconstitutionally vague about the statute.

Sometimes we, as professional fault-finders, look for perfection when none exists. The majority, in its opinion, has created precedent that makes it all but impossible to prosecute a case under article 5472e. One is led to believe, from the majority footnote, that the purpose of 5472e is "debt collection"[7] or a recourse for "shabby workmanship."[8] Thus, I feel that it is the statute, not this case, that most offends the majority. I would hold that a repeal of article 5472e would best be performed by the legislature, rather than by judicial emasculation.

I dissent from the majority opinion and would, accordingly, affirm.

STEWART, J., joins in this opinion.

---

7. This quote is a footnote by Chief Judge Onion that related to facts in a theft by deception case in which there was no "other evidence of intent or knowledge."

8. The "shabby workmanship," in my view, is relevant as a circumstance tending to prove that appellant did not use complainant's money to put "quality" into the structure. To the contrary, there was overwhelming evidence that the structure was an unfinished mess.