**NORTH TEXAS OPERATING ENGINEERS HEALTH BENEFIT FUND, and its Trustees, et al., Plaintiffs,**

**v.**

**DIXIE MASONRY, INC., and Robert J. Dudley, Defendants.**

Civ. A. No. CA–3–80–0533–D.

United States District Court,
N. D. Texas,
Dallas Division.

July 23, 1982.

Jerry L. Carlton, Matthews, Allen & Russell, Dallas, Tex., for plaintiffs.

James C. Tubb, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT M. HILL, District Judge.

This action having been heard by the Court without a jury, the Court is of the opinion that a verdict in favor of plaintiffs North Texas Operating Engineering Health Benefit Fund, et al. (collectively, Trust Funds) and against defendant Dixie Masonry, Inc. (Dixie Masonry) should be entered, but that a verdict in favor of defendant Robert J. Dudley (Dudley) should also be entered. In support of the verdict, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

*Findings of Fact*

1. This action was filed by the Trust Funds against Dixie Masonry and Dudley seeking recovery of contributions allegedly owed pursuant to certain collective bargaining agreements. Under the collective bargaining agreements, Dixie Masonry agreed to pay stipulated rates per hour for each hour worked by all employees of Dixie Masonry covered by the collective bargaining agreements into the various Trust Funds.

2. The Trust Funds are all employee benefit plans. The Trust Funds can be broken down into the categories of "Operating Engineers Funds" and "Bricklayers Funds."

3. Dixie Masonry has admitted liability to the Trust Funds. For the period including January 1, 1979, through December 31, 1979, Dixie Masonry is indebted for contributions to the Operating Engineers Funds in the amount of $1,093.53 and to the Bricklayer Funds in the amount of $4,491.86.

4. Dixie Masonry has two construction contracts for the improvement of specific real property, the "Valley View job" and the "Richardson Square job."

5. Dixie Masonry received $383,604.65 under the contract for the Valley View job and $297,406.96 under the contract for the Richardson Square job. The amounts received are amounts Dixie Masonry was actually paid by the general contractor on each job. The funds received were trust funds for the benefit of the artisans, laborers, mechanics, contractors, sub-contractors or materialmen on each contract job.

6. Using a cash basis or cost method of accounting, the total job cost, excluding general administration expense, for the Valley View job was $325,903.38, leaving a gross job profit of $67,701.27.

7. Under a cash basis method of accounting, the total job cost for the Richardson Square job, excluding general administration expense, was $254,475.99, leaving a gross job profit of $42,831.97.

8. Using an accrual system of accounting, the total billings by Dixie Masonry for the Valley View job was $425,103.40. The

total billings for the Richardson Square job was $325,398.16. The total billings represent the amount billed the general contractor on each job by Dixie Masonry.

9. Under an accrual system of accounting, the total accrued cost for the Valley View job, excluding general administration expense, was $382,655.26, leaving a gross job profit of $42,448.14.

10. Using an accrual method of accounting, the total accrued cost for the Richardson Square job, excluding general administration expense, was $325,902.59, leaving a gross job loss of $504.43.

11. Dixie Masonry is a wholly owned subsidiary of Genni Corporation ("Genni"). Genni employed and paid Dixie Masonry's central office staff and was reimbursed by Dixie Masonry for the expenses associated with providing this service.

12. General administration costs were accounted for on an accrual basis and then allocated to each construction project based on the amount of revenue each project generated. The amount allocable to a project was calculated by dividing the total billings ("TB") for each project by the total accrued revenue ("TAR") for all of the projects of Dixie Masonry and Genni, and then multiplying the result by the total general administration expenses ("GA") of Dixie Masonry and Genni. The formula can be expressed as

$$\frac{TB}{TAR} \times GA = \text{allocated general administration expenses per project.}$$

13. The total accrued revenue (TAR) for the time period under consideration was $977,863.

14. The total general administration expenses (GA) for the time period under consideration was $172,724.

15. According to a survey of contractors published by Robert Morris Associates, general overhead expense averages 23.8% of the gross billings for masonry contractors with gross billings under one million dollars and an average of 17.9% of the gross billings for masonry contractors of all sizes.

16. Using the accrual method, the general administration expenses allocable to the Valley View project approximately equals $75,089, or 17.67% of the total billings for the project.

17. Under the accrual method, the general administration expenses allocable to the Richardson Square job approximately equals $57,476, or 17.67% of the total billing for the project.

18. The combined accrued general administration expenses for both projects of $132,565 is 19.18% of the cash actually received for the two projects.

19. The general administration expenses allocated to each project under the accrual method is reasonable.

20. The actual general administration expense for a job could vary from what the accounting method used by Dixie Masonry reflected. In addition, the general administration expenses figure used by Dixie Masonry included certain fixed expenses, such as estimator's salaries, telephones, etc., which can not directly be traced to a particular project. These fixed expenses, however, must necessarily have been incurred in order to secure and successfully complete any particular job.

21. Dudley was an officer and director of Dixie Masonry during the entire period covering the Dixie Masonry work on the Valley View and Richardson Square jobs and had control over the funds paid to Dixie Masonry.

22. Operating Engineers employees of Dixie Masonry worked 498 hours on the Valley View job, producing total contributions due to the Operating Engineers Funds of $771.90.

23. Bricklayers employees of Dixie Masonry worked 1965.5 hours on the Valley View job producing total contributions due to the Bricklayers Funds of $2,042.13.

24. Operating Engineer employees of Dixie Masonry worked 259 hours on the Richardson Square job, producing total contributions due to the Operating Engineer Funds of $2,042.13.

25. Bricklayers employees of Dixie Masonry worked 2,244.5 hours on the Richardson Square job, producing total contributions due to the Bricklayer Funds of $2,401.63.

26. A net loss was incurred on both the Valley View and Richardson Square jobs after subtraction of the accrued general administration expense allocated to each project.

27. No custom or practice evidence was presented on how the general administration expenses are accounted for in the masonry contracting industry.

### Conclusions of Law

1. The Court has jurisdiction over the action under 29 U.S.C. §§ 185(a) and 1132(e), and venue is proper in the Northern District of Texas.

2. Liability of Dudley depends on the construction to be given to Tex.Rev.Civ. Stat.Ann. art. 5472e (Supp.1982), which provides, in pertinent part:

> Section 1. All moneys or funds paid to a contractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, ... are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; *provided, however, that moneys paid to a contractor or subcontractor ... may be used to pay reasonable overhead of said contractor, subcontractor, or owner, directly related to such construction contract.* The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby constituted a Trustee of such funds so received, or under his control or direction. (emphasis added).

The central issue in this action is what constitutes "reasonable overhead ... directly related to [a] construction contract."

3. Within the limitation of the statutory terms, the Court should attempt to give article 5472e a broad construction in order to effectuate its protective purposes. *Owens v. Drywall and Acoustical Supply Co.*, 325 F.Supp. 397, 400 (S.D.Tex.1971).

4. As used in the statute, "overhead" is a broad term. As generally understood in the field of accounting, overhead broadly includes the continuous expenses of a business, without regard to the outlay on a particular contract. *Vitex Manufacturing Corp. v. Caribtex Corp.*, 377 F.2d 795, 798 (3d Cir. 1967); Black's Law Dictionary 1257 (4th ed. 1951); The Random House Dictionary of English Language 1027 (1969). The parties, however, have not disputed that job costs constitute overhead within the meaning of the statute. The principal dispute is over whether defendants have shown that the general administration expense is overhead directly related to each of the jobs.

The Trust Funds' argument rests on two grounds. First, that there was insufficient evidence presented to show that the general administration expenses claimed by Dixie Masonry were directly related to the specific construction contracts. Implicit in this argument is the contention that the fixed costs which are included in the total general administration expense can never be directly related to a particular construction contract. The second ground is based on the somewhat related contention that the method used to allocate the general administrative expense does not reflect the actual expense incurred on a particular job.

5. The Court is of the opinion that sufficient evidence was presented by Dudley to support the claimed amount of general administration expenses. The legislature limited overhead to reasonable expenses. Thus, even payments that can be directly traced to a particular contract may be disallowed if they are unreasonable, and the requirement that payments for overhead be reasonable similarly acts as a limitation on overhead expenses allocated to a particular construction contract. In addition, the legislature used the term "over-

head," a word normally connotating expenses not readily assignable to a particular project. Every word in a statute is presumed to have been used intentionally and in the sense in which it is commonly understood, and when a word has a settled meaning or legal significance, it is presumed to have been used in that sense. *Turullols v. San Felipe Country Club*, 458 S.W.2d 206, 209 (Tex.Civ.App.1970, writ ref'd n.r.e.). The expenses that cannot readily be traced to a particular project are nonetheless "directly related" if the job could not have been obtained or completed without them.

Article 5472e can be interpreted to impose personal liability on those designated as trustees under the statute for the misapplication of funds under their control. *Nuclear Corp. of America v. Hale*, 355 F.Supp. 193, 197 (N.D.Tex.1973); Youngblood, *Mechanics and Materialmen's Liens in Texas*, 26 Sw.L.J. 665, 687 (1972). Also, this provision probably was enacted for the purpose of discouraging contractors from engaging in the customary practice of paying the last job's expenses with the next job's financing. *Id.* n. 195. Viewed in the light of these objectives, it is readily apparent that the legislature imposed the requirement that payments for overhead be directly related to a construction contract as means of assuring that funds would be nonfraudulently applied to expenses associated with ongoing construction projects.

6. It only remains to be determined if the method used to allocate expenses to each job is proper. The Trust Funds' objection to the amount of general administration expense allocated to each job is that it does not reflect "the true overhead incurred by Dixie Masonry on the jobs." However, no evidence was presented that the method used was unreasonable or unfair, and the Court has already determined that the "directly related" requirement does not mandate that the expenses necessarily be directly traceable to a particular project. The Court is of the opinion that the method used to allocate the general administration expenses reasonably reflects the expenses associated with each project.

7. After subtracting the administration expenses, Dixie Masonry suffered a loss on both of the jobs. Therefore, there are no funds left in trust and Dudley has no personal liability.

8. Dixie Masonry is liable to the Trust Funds for reasonable attorneys' fees of $2500.

9. Any finding of fact determined to be a conclusion of law is so deemed, and any conclusions of law determined to be a finding of fact is so deemed.