

# THE ATTORNEY GENERAL
## OF TEXAS

August 24, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable John T. Montford
Chairman
State Affairs Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.   JM-945

Re:  Interpretation of 1987 amendments to  chapter  162 of the Property Code regarding construction funds or trust funds  (RQ-1402)

Dear Senator Montford:

You ask seven questions about the provisions of chapters 53 and 162 of the Property Code as amended by House Bill No. 1160 in  1987.  Acts 1987, 70th Leg., ch. 578, at 2283.  House Bill 1160 made various provisions for the protection of  subcontractors  and  other  beneficiaries  of funds paid  or held  under construction  contracts, and  its provisions operate in conjunction with the overall scheme of Texas Mechanic's, Contractor's,  or Materialman's Lien  Law, chapter 53, Property Code.

Chapter  162,  as  amended  by  House  Bill  No.  1160, provides that construction  payments or  loan receipts  held for the purpose of paying for improvements of real property, are "trust funds"[1] which may not be used or diverted by  the holder until those who have furnished labor or materials for such improvements have been paid.

Section 53.085, added by House Bill No. 1160,  provides that a seller, or a person who has furnished labor or materials for an improvement shall, upon request and as a  condition of final  payment, furnish the  purchaser an  affidavit

---

1.  Section 162.004(b) of the Property Code provides:

The Texas Trust Act ('chapters 111 through 115)  does not apply to any trust created under this chapter,  nor does this  chapter affect  any provision  of the  Texas Trust Act.

stating that he has fully paid those who have furnished him labor or materials for the improvement. If he has not fully paid, the affidavit must state how much is owed for such labor or materials and to whom.

Your first question is:

> Do the 1987 amendments to Chapter 162, Property Code, affect prior law concerning the applicability of that chapter to transactions involving banks, savings and loans, or other lenders. If so, in what ways do they change prior law?

We answer your first question in the negative. Section 162.004(a)(1) of the Property Code provides that chapter 162 of the code does not apply to "a bank, savings and loan, or other lender." This provision, formerly part of article 5472e, V.T.C.S., was recodified in the Property Code without substantive change in 1983. Acts 1983, 68th Leg., ch. 576, § 7 at 3730. Nor was section 162.004(a)(1) amended in 1987 by House Bill No. 1160. See RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605 (Tex. 1985) (considering section 162.004(a)(1) as formerly incorporated in article 5472e, V.T.C.S.).

Your second question is:

> Do 'expenses directly related to the construction or repair of the improvement' under Section 162.031(b), Property Code, include the trustee's overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job (e.g., office rent, employee salaries, workers' compensation insurance, liability insurance, communications bill, etc.)?

Section 162.031 was amended by House Bill No. 1160. Prior to that amendment section 162.031 read:

> (a) Except as provided by Subsection (b), a trustee who, with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

> (b)  A trustee may use trust funds to pay the trustee's reasonable overhead expenses that are directly related to the construction or repair of the improvement.  (Emphasis added.)

Section 162.031 now reads:

> (a)  A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

> (b)  It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

> (c)  It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal complaint or other notice of a pending criminal investigation. (Emphasis added.)

The bill analysis to House Bill No. 1160 indicates that section 162.031 was amended in response to the difficulties experienced by prosecutors in obtaining convictions.

In McElroy v. State, 720 S.W.2d 490 (Tex. Crim. App. 1986), the Court of Criminal Appeals affirmed the Dallas Appeals Court's reversal of a conviction under the provisions of section 162.031 as they appeared in former article 5472e, V.T.C.S.  The Court of Criminal Appeals held that

those provisions required the state to plead and prove that trust fund moneys had not been paid out for reasonable overhead expenses. The court declined to reach the issue of the constitutionality, for purposes of criminal prosecution, of the "reasonable overhead" language, which two concurring judges in the lower Dallas court had found "vague on its face and thus void and unenforceable." See McElroy v. State, 667 S.W.2d 856, 869 (Tex. App. - Dallas 1984) (concurring opinion). The concurring opinion relied on the reasoning in Parks v. Libby-Owens-Ford Glass Co., 195 N.E. 616, 622 (Ill. 1935): "[What is] deemed reasonable by one employer might well be considered unreasonable by another.")

House Bill No. 1160 changed the words of the provision from "reasonable overhead" to "actual expenses," apparently in an effort to avoid a later judicial determination that the provision was void for vagueness. House Bill No. 1160 also made the "actual expenses" provision an affirmative defense, placing on criminal defendants the burden of proving that expenditures were for "actual expenses" rather than requiring the state to prove that expenditures were not for actual expenses. The words "directly related," however, were not altered when the prior language "reasonable overhead directly related" was changed to "actual expenses directly related."

We do not believe that the requirement that expenses be "directly related" to the construction or repair of the improvement means that expenses must necessarily be readily traceable to the improvement. In considering the phrase "reasonable overhead directly related" in former article 5472e, V.T.C.S., the court in North Texas Operating Engineers Health Benefit Funds v. Dixie Masonary, Inc., 544 F.Supp. 516 (N.D. Tex. 1982) stated, at 520:

> The expenses that cannot readily be traced to a particular project are nonetheless 'directly related' if the job could not have been obtained or completed without them.
>
> . . . .
>
> It only remains to be determined if the method used to allocate expenses to each job is proper.

The court did not further discuss what would be a proper method of allocating expenses, finding only that no evidence had been presented "that the method used was unreasonable or unfair . . . ." Id. at 520.

Discussions in both the House and Senate indicate the intended scope of the "actual expenses" language added by House Bill No. 1160.

Representative Robnett:

Do you intend that it is o.k. for a builder to pay his superintendent, secretary, computer, pick-up truck, office or any administrative expenses and other similar expenses related to the construction of a home out of these trust funds?

Representative Parker:

I think, yes, I certainly do and I [want to] direct your attention, Buzz -- I think it's important -- to that 'directly related' now. I think there has to be a -- maybe you might need to ask a 'but for' question. And 'but for' the construction would I need to spend this money. And if it's related to construction, I think it's exempted. I do not think it presents a problem.[2]

House Floor Debate (Point of Order - Tape 112, Side B, 5-30-87).

Mr. Johansen [Executive Vice President of Texas Association of Builders]:

[W]hen you have a multiplicity of loans and a multiplicity of houses under construction it's almost impossible to track that money through and to prove that X draw was paid on X house when you have other on-going expenses and overhead -- overhead items that you need to pay.

Senator Parker:

[Builders got in trouble under the old law] because they refused to keep decent records . . . what is so difficult about

---

2. Representative Parker was the sponsor of House Bill No. 1160.

> [it]. It ought not to be that hard to figure
> out some proportion of your overhead -- total
> overhead that goes to per day, per month, per
> man hour worked.

Senate Committee Hearing, Tapes 2 and 3, 5-19-87.

In light of the foregoing, we conclude, in response to your second question, that the words of section 162.031, "actual expenses directly related to the construction or repair of the improvement," include overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job, so long as the expenses are "actual," i.e., have in fact been incurred.

Your third question is:

> May a contractor, subcontractor or owner
> who becomes a trustee also be a beneficiary
> of the trust if he has furnished labor or
> materials; and, may he pay himself as a
> beneficiary on the same basis that he pays
> the other beneficiaries?

We refer again to the language of section 162.031, quoted in full above in the discussion of your second question. We believe that the language in subsection (a) of section 162.031 -- "obligations incurred by the trustee to the beneficiaries" -- indicates that for purposes of chapter 162, a trustee of a given trust fund is not also to be considered a beneficiary of the trust fund. It would be anomalous to provide that a person could "incur" obligations to himself. Moreover, if a trustee could also be a beneficiary of the trust fund he held, there would be no reason to provide in subsection (b) that a trustee may set up as an affirmative defense to an action for diversion of trust funds the fact that the funds were used to pay the "trustee's actual expenses directly related to the construction or repair." If the trustee could be considered a beneficiary of the trust funds he held, his payment of his own actual expenses on the project from the trust fund would be a lawful payment to a beneficiary under subsection (a), and the provision of subsection (b) that such payment may be set up as an affirmative defense would be unnecessary. Thus, we conclude that the statutory scheme of chapter 162 does not contemplate that a trustee of funds thereunder might also be considered a beneficiary of such funds within the meaning of the chapter's provisions.

Your fourth question is:

>     If a trustee has paid all current or  past
> due obligations  to  beneficiaries  of  trust
> funds, may remaining trust funds be used  for
> any purpose, whether related or unrelated  to
> the construction  of the  repair or  improve-
> ment?

Subsection  (a)  of  section  162.031,  quoted  in  the discussion regarding your second question, indicates that if a trustee has "first  fully [paid] all  current or past  due obligations incurred by the  trustee to the  beneficiaries," he may then retain, use, disperse or otherwise divert moneys in the  fund without  thereby  misapplying the  funds.   The words "current  or past  due" were  added to  the  section's provisions by House Bill No. 1160.[3]

In the House discussion  on House Bill  No. 160 on  May 30, 1987, the following exchange took place:

Representative Parker:

>     I assume if you  pay your current or  past
> due obligations, then  I assume  that if  the
> rest is  profit, I  assume that  you can  use
> that.

Representative Heflin:

>     So there  would be  no way  that a  person
> would have  to set  aside  the profit  for  a
> particular project  until  that  project  was
> absolutely complete,  if  he  stayed  current
> with his obligations.

---

3.  Section 162.005(2)  defines current  or past  due obligations as "those  obligations incurred or  owed by  the trustee for  labor  or  materials furnished  in  the  direct prosecution of  the  work under  the  construction  contract prior to the receipt  of the trust funds  and which are  due and payable by the trustee  no later than 30 days  following receipt of the trust funds."

Representative Parker:

I can tell you absolutely that that is not the intent of the bill.

In response to your fourth question, it is apparent from the House discussion in connection with the added "current or past due obligations" language, and from the plain meaning of the provision itself, that money remaining in the fund after payment of current and past due obligations can lawfully be diverted to other purposes by the trustee.

Your fifth question is:

Does the notice requirement in Section 162.031(b), Property Code, apply only to the affirmative defense of funds retained by the trustee or does it also apply to the defense of use of funds to pay actual expenses directly related to the construction or repair?

Section 162.031(b) of the code states in part:

(b) It is an affirmative defense . . . that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses . . . or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53. (Emphasis added.)

Prop. Code § 162.031(b). The underlined phrase stating the notice requirement modifies only "have been retained." The notice requirement in section 162.031(b) does not apply to the other two affirmative defenses there provided for: that the funds were used to pay the trustee's actual expenses directly related to the project, or were retained under the provisions of chapter 53 of the Property Code.

Your sixth question is:

> Does Section 53.085, Property Code, create a duty for a contractor to require affidavits from all persons who furnish labor or materials on a property?

Section 53.085, which was added by House Bill No. 1160, 1987, provides:

> AFFIDAVIT REQUIRED. (a) Any person who furnishes labor or materials for the construction of improvements on real property shall, upon request and as a condition of final payment for such labor or materials, provide to the requesting party, or its agent, an affidavit stating that such person has paid each of his subcontractors, laborers, or materialmen in full for all labor and materials provided to him for the construction. In the event that the person has not paid each of his subcontractors, laborers, or materialmen in full, the person shall state in the affidavit the amount owed and the name of each subcontractor, laborer, or materialman to whom such payment is owed.
>
> (b) The seller of any real property shall, upon request by the purchaser or its agent prior to closing of the purchase of such real property, provide to such purchaser or its agent, a written affidavit stating that the seller has paid each of his contractors, laborers, or materialmen in full for all labor and materials provided to the seller for any construction of improvements on the real property and that the seller is not indebted to any person, firm, or corporation by reason of any such construction. In the event that the seller has not paid each of his contractors, laborers, or materialmen in full, the seller shall state in the affidavit the amount owed and the name of each contractor, laborer, or materialman to whom such payment is owed.
>
> (c) A person, including a seller, commits an offense if the person intentionally, knowingly, or recklessly makes a false or misleading statement in an affidavit under

this section.  An offense under this  section
is a Class A misdemeanor.

Subsection (a) of  section 53.085  authorizes a  person
such as a  contractor to  request, as a  condition of  final
payment, that "any person who furnishes labor or  materials"
for a  construction project  furnish him  an  all-bills-paid
affidavit or an affidavit stating which bills remain unpaid.
There is  no indication  in the  statutory language  that  a
person such as a contractor is _required_ to request or obtain
such affidavits.

Before paying a subcontractor, for example, a contract-
or is entitled under section 53.085 to request that the sub-
contractor as  a condition  of  final payment  furnish  such
affidavit to  the  contractor,  but  the  section  does  not
require  that  the  contractor  request  or  obtain  such
affidavit.

Similarly, if the  contractor is  seeking payment  from
the owner, for example,  the owner is  entitled, but is  not
required, under  section 53.085  to request  such  affidavit
from the contractor as a condition of payment.  In this case
as well, there is nothing in section 53.085 to indicate that
the request for  the contractor's affidavit  creates a  duty
for the  contractor to  in  turn  request  affidavits  from
subcontractors, materialmen or others  doing work under  the
contractor.  He may,  but is not  required, to request  such
affidavits.  We therefore answer your sixth question in  the
negative.

Your seventh, and last, question is:

In making an affidavit, does a  contractor
impliedly represent that it  is based on  re-
ceiving affidavits from  each of the  persons
from whom such affidavits may be required?

We believe  it follows  from our  discussion  regarding
your sixth question that the answer to your seventh question
is "No."  Since a  contractor  furnishing an  affidavit  on
request to  the  owner,  for example,  is  not  required  to
request affidavits from subcontractors, etc., working  under
him, the contractor's affidavit cannot be read as  impliedly
representing that  it  is based  on  the affidavits  of  his
subcontractors, etc.  A  contractor may  make his  affidavit
based on information obtained  through other means than  the
affidavit  procedure  which  under  section  53.085  he  is
entitled,  but  not  required,  to  use.   Of  course,  the
contractor's affidavit may,  if the  contractor so  chooses,

expressly represent that it is based on the affidavits of those under the contractor whose affidavits he has obtained. It might, moreover, be wise for the contractor to obtain the affidavits of those under him and expressly base his affidavit on the affidavits he has obtained, so as to avoid a penalty under subsection (c) of section 53.085 for "intentionally, knowingly, or recklessly" making "a false or misleading statement." But again, there is nothing in the controlling statutory provisions which requires the contractor to obtain the affidavits of those under him, or which makes the contractor's affidavit a representation by implication that he has in fact obtained such other affidavits and has based his affidavit on them.

### S U M M A R Y

The 1987 amendments to chapter 162 of the Property Code do not affect prior law concerning the applicability of that chapter to banks, savings and loans, or other lenders.

In section 162.031(b) of the Property Code "actual expenses directly related to the construction or repair of the improvement," include overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job, so long as such expenses are "actual," i.e., have in fact been incurred.

A contractor, subcontractor or owner who becomes a trustee of construction funds within the meaning of chapter 162 may not also be considered a beneficiary of such funds within the meaning of that chapter.

If a trustee has paid all current or past due obligations to beneficiaries of trust funds under Property Code section 162.031, he may use remaining trust funds for other lawful purposes whether related or unrelated to the project in connection with which the trust fund was created.

Section 162.031, subsection (b), requires notice to a beneficiary who has made a request for payment only where the trustee has retained funds as a result of the trustee's reasonable belief that the

beneficiary is not entitled to such funds. The notice requirement in subsection (b) is not applicable to the other affirmative defenses provided for in that subsection.

Section 53.085 does not require, but only entitles, a contractor to request, as a condition of final payment, affidavits from all persons who have furnished labor or materials on the project.

In making an affidavit under section 53.085, a contractor does not, by virtue of that section, impliedly represent that his affidavit is based on affidavits from those persons from whom the contractor is entitled to request affidavits.

Very truly yours,

**JIM MATTOX**
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General